720 So.2d 1095 (1998)
STATE of Florida, Appellant,
v.
Kathryn P. HAYES, Appellee.
No. 97-2014.
District Court of Appeal of Florida, Fourth District.
September 23, 1998.
Rehearing Denied December 21, 1998.
Robert A. Butterworth, Attorney General, Tallahassee, and James J. Carney, Assistant Attorney General, West Palm Beach, for appellant.
Andrew B. Metcalf of Law Offices of Norman A. Green, P.A., Vero Beach, for appellee.
Steven Brian Whittington of Robert Augustus Harper Law Firm, P.A., Tallahassee, for amicus curiae Florida Association of Criminal Defense Lawyers.
SHAHOOD, Judge.
The state appeals the lower court's dismissal of an information charging appellee, Kathryn P. Hayes ("Hayes"), with trafficking in four grams or more of hydrocodone in violation of section 893.135(1)(c)1, Florida Statutes (1996). For the reasons set forth below, we reverse the order dismissing the charges, align ourselves with the Fifth District Court of Appeal, and certify conflict with the First and Second District Courts of Appeal.
Hayes identified herself as an employee from a doctor's office and phoned in a fraudulent prescription at a local drug store. After being unable to verify the prescription, the pharmacist alerted the police. Hayes went to pick up the prescription and, when she left the store, the police arrested her and retrieved 40 tablets of Lorcet, a hydrocodone derivative. She was charged with trafficking in four grams or more of hydrocodone in violation of section 893.135(1)(c)1, Florida Statutes (1996), and moved to dismiss the charges. Following the First District Court of Appeal's decision in State v. Holland, 689 So.2d 1268 (Fla. 1st DCA 1997), the trial court dismissed the charges.
Section 893.135(1)(c)1, Florida Statutes (1996) prohibits the sale, purchase, manufacture, delivery or possession of
4 grams or more of any morphine, opium, oxycodone, hydrocodone, hydromorphone, or any salt, derivative, isomer, or salt of an isomer thereof, including heroine, as described in s. 893.03(1)(b) or (2)(a), or 4 grams or more of any mixture containing any such substance or mixture,.... *1096 (Emphasis added). The statute includes drugs described in Schedule I (§ 893.03(1)(b)), and Schedule II (§ 893.03(2)(a)), but not those listed in Schedule III (§ 893.03(3)). Hydrocodone is listed in both Schedule II and Schedule III. It is considered a Schedule II drug if it is found in quantities greater than 300 milligrams per 100 milliliters or 15 milligrams per dosage unit; it is considered a Schedule III drug in quantities smaller than those amounts.
The issue presented in this case is whether Hayes could be charged with trafficking under section 893.135 where the amount of hydrocodone in each Lorcet tablet was less than 15 milligrams (specifically, 7.5 milligrams), making it a Schedule III drug, but where the aggregate weight of all 40 tablets, each of which contained a mixture of hydrocodone and acetaminophen, was more than 28 grams, making it a Schedule II drug.
In State v. Baxley, 684 So.2d 831 (Fla. 5th DCA 1996), rev. denied, 694 So.2d 737 (Fla. 1997), the Fifth District answered that question in the affirmative holding that "[i]f the number of tablets aggregates 4 grams or more of hydrocodone or a mixture of hydrocodone, then ... prosecution is proper under section 893.135." In Holland, however, the First District reached the opposite conclusion holding that "if a mixture containing the controlled substance falls within the parameters set forth in Schedule III, the amount of the controlled substance per dosage unit, not the aggregate amount or weight" is determinative for prosecution under section 893.135(1)(c)1. Accord State v. Perry, 716 So.2d 327 (Fla. 2d DCA 1998)(affirmed dismissal of charges based on Holland). Based upon our reading of the legislative history of section 893.135(1)(c)1, as well as the United States Supreme Court's interpretation of the federal law on which our state statute is based, we reach the same conclusion as the court in Baxley.
In 1995, section 893.135(1)(c)1, Florida Statutes, was amended to include oxycodone, hydrocodone, hydromorphone, and any derivative of oxycodone, hydrocodone, hydromorphone, opium, morphine, or heroin under the purview of the trafficking statute. § 893.135(1)(c)1, Fla. Stat. (1995). The change was brought about by the rise in court cases in Florida in which people had avoided conviction for trafficking in substances not listed in the statute. (See Staff of Fla. H.R. Comm. on Health Care, CS/HB 1385 (1995) Staff Analysis 2 (Final May 12, 1995)(on file with comm.)) Florida's trafficking statute was then amended to parallel the federal controlled substances law, 21 C.F.R. § 1308.22, with some exceptions. (Id., p. 1); see also Staff of Fla. S. Comm. on Com., CS for SB 272 (1993) Staff Analysis 1 (Feb. 16, 1993)(on file with comm.) The obvious intent of the legislators, therefore, was to broaden the scope of the trafficking statute to allow the state to prosecute persons, such as Hayes, who previously had escaped conviction and punishment.
It is clear that the Legislature intended for the state to prosecute traffickers in hydrocodone as zealously as it prosecutes those who traffick in other substances. What remains unclear, however, is which quantities of hydrocodone, or any mixture thereof, fall within the Schedule II classification, thus activating the trafficking statute, and which retain the Schedule III classification, which is outside the scope of the statute. Although the issue has not been thoroughly addressed in Florida, the United States Supreme Court, interpreting the Federal Sentencing Guidelines in relation to Title 21, resolved the issue in Chapman v. United States, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), superseded by statute on other grounds as stated in, United States v. Turner, 59 F.3d 481 (4th Cir.1995).
In Chapman, the defendant was convicted of selling 10 sheets of blotter paper containing 1,000 doses of LSD in violation of 21 U.S.C. § 841(a). Id. at 455, 111 S.Ct. 1919. The law called for "a mandatory minimum sentence of five years for the offense of distributing more than one gram of a `mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD).'" Id. The Supreme Court held that the weight of the blotter paper, and not just the weight of the pure LSD which the paper contained was to be used in determining the sentence. Id. The Court concluded that this *1097 interpretation was compatible with Congress' "`market-oriented' approach to punishing drug trafficking, under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of the sentence." Id. at 461, 111 S.Ct. 1919 (citing H.R.Rep. No. 99-845, pt. 1, pp. 11-12, 17 (1986)).
Noting that neither the statute nor the sentencing guidelines defined either "mixture" or "substance", the Chapman court deciphered their meaning within the scheme of the drug laws, by first consulting various dictionaries:
A "mixture" is defined to include "a portion of matter consisting of two or more components that do not bear a fixed proportion to one another and that however thoroughly commingled are regarded as retaining a separate existence." Webster's Third New International Dictionary 1449 (1986). A "mixture" may also consist of two substances blended together so that the particles of one are diffused among the particles of the other. 9 Oxford English Dictionary 921 (2d ed.1989).
Id. Applying these definitions to the blotter papers containing LSD, the court decided that since the drug was dissolved onto the paper, the drug and paper had "mixed" or "commingled", but the LSD had not chemically combined with the paper. Id. Although the two could be separated, they could also be ingested together like cocaine or heroine mixed with cutting agents; therefore, it was logical to include the weight of the paper in calculating the total weight of the controlled substance. Id. Conversely, the court held that the weights of containers or packaging materials, which clearly do not mix with the drug and are not consumable along with the drug, could not logically be included for sentencing purposes. Id.; compare United States v. Rolande-Gabriel, 938 F.2d 1231 (11th Cir.1991)(held that where cocaine was mixed with liquid waste, the gross weight of the unconsumable or unusable mixtures should not be equated with the weight of a controlled substance for sentencing purposes).
The Chapman analysis applies with respect to the Lorcet tablets in this case. The hydrocodone has been mixed, or commingled, with the acetaminophen, and the two are ingested together. The acetaminophen facilitates the use, marketing, and access of the hydrocodone. See Rolande-Gabriel, 938 F.2d at 1237. Therefore, based upon the legislature's clear intent to create the offense of trafficking in hydrocodone, as well as the Supreme Court's definition of the term "mixture" as it is used in this context, we conclude that the aggregate weight of the tablets seized from Hayes, and not the amount of hydrocodone per dosage unit, is the determinative weight for prosecution under section 893.135(1)(c)1, Florida Statutes (1996). Since the weight of the hydrocodone mixture exceeded four grams, Hayes could be prosecuted under section 893.135(1)(c)1 for trafficking in a Schedule II drug. As such, we reverse the order dismissing the information in this case, and certify conflict with Holland and Perry.
REVERSED AND REMANDED.
POLEN and STEVENSON, JJ., concur.