We have for review the Fourth District's decision inState v. Hayes, 720 So.2d 1095 (Fla. 4th DCA 1998), which certified conflict with the Second District's decision inState v. Perry, 716 So.2d 327 (Fla. 2d DCA 1998), and the First District's decision in State v. Holland,689 So.2d 1268 (Fla. 1st DCA 1997), concerning whether the drug trafficking statute applies to possession of hydrocodone in amounts under fifteen milligrams per dosage unit. We have jurisdiction. See art. V, § 3(b)(4). For the reasons that follow, we quash the decision under review.
According to the State's allegations, Kathyrn Hayes phoned in a fraudulent prescription to a local pharmacy for forty tablets of Lorcet, which is approximately a one-week supply of the drug when administered according to directions. The pharmacy was unable to verify the prescription and contacted police. When Hayes arrived to retrieve the prescription, she was arrested.
Lorcet is a brand name prescription pain reliever containing approximately 750 milligrams of acetaminophen (Tylenol) and 7.5 milligrams of hydrocodone per tablet. Thus, each tablet of Lorcet contains one percent of hydrocodone. Hydrocodone is a codeine derivative pain killer, found in some trade name drugs, including Lorcet and Vicodin. See Stedman'sMedical Dictionary 816 (26th ed. 1995).
Hayes was charged with trafficking in four grams or more of hydrocodone in violation of section 893.135(1)(c)1, Florida *Page 2 
Statutes (Supp. 1996). The trial court granted Hayes' motion to dismiss the charges, relying on the First District's opinion inHolland, and the State appealed to the Fourth District. The Fourth District reversed based on its interpretation of the applicable statutes, concluding that Hayes was properly charged with trafficking. See Hayes, 720 So.2d at 1097.
The issue that we must resolve in this case is whether Hayes could be properly charged under the trafficking statute, section893.135, which provides mandatory minimum terms of imprisonment and mandatory fines for trafficking in various drugs. The trafficking statute at issue in this case, section893.135(1)(c)1, prohibits the sale, purchase, manufacture, delivery, or possession of four grams or more of the following substances:
 morphine, opium, oxycodone, hydrocodone, hydromorphone, or any salt, derivative, isomer, or salt of an isomer thereof, including heroin, as described in section 893.03(1)(b) [Schedule I] or (2)(a) [Schedule II] or 4 grams of any mixture containing such substance . . . commits a felony of the first degree, which felony shall be know as "trafficking in illegal drugs."
(Emphasis supplied.) As the Fourth District recognized, the drug trafficking statute applies only to Schedule I and Schedule II illegal substances, and not to Schedule III substances.See Hayes, 720 So.2d at 1096. However, hydrocodone is listed in both Schedule II and Schedule III.
If the Lorcet tablets that Hayes possessed are properly classified as Schedule II substances, Hayes would be subject to a mandatory minimum term of imprisonment of twenty-five years and a mandatory fine of $500,000. See 893.135(1)(c)1.c. On the other hand, if the Lorcet tablets that Hayes possessed constitute a Schedule III substance, then Hayes could not be prosecuted under the trafficking statute. Instead, she could be prosecuted for unauthorized possession of a Schedule III substance, a third degree felony, see §893.13(1)(a)2, Fla. Stat. (Supp. 1996), punishable by a term of imprisonment not to exceed five years. See §775.082(3)(d), Fla. Stat. (1995).
The district courts of appeal addressing this issue have reached differing conclusions. The Fourth and Fifth Districts have concluded that it is proper to consider the aggregate weight of the tablets to determine whether the defendant can be charged with drug trafficking. See, e.g., Hayes, 720 So.2d at 1097; State v. Baxley, 684 So.2d 831, 832-33 (Fla. 5th DCA 1996).[1] In contrast, the First and Second Districts have concluded that if the amount of hydrocodone is fifteen milligrams or less per dosage unit, as is the hydrocodone in this case, the defendant possesses a Schedule III substance and cannot be charged with the crime of trafficking.See, e.g., Holland, 689 So.2d at 1270;[2] Perry, 716 So.2d at 327.[3] *Page 3 
As pointed out by Judge Klein in his concurring opinion inState v. Dial, 730 So.2d 813, 813 (Fla. 4th DCA 1999), the penalty for possessing a minimal number of prescription tablets containing hydrocodone would subject the defendant to a twenty-five year mandatory minimum sentence and a $500,000 fine even though the total amount of hydrocodone was as little as .3 grams. This is the same penalty prescribed for a defendant who illegally possesses twenty-eight grams of pure heroin. §893.135(1)(c)1.c. "This anomaly occurs" because, according to the construction given by the Fourth and the Fifth Districts, "it is the total weight of the tablets, which are ninety-eight percent a non-controlled substance, which determines the penalty." Dial, 730 So.2d at 813 (Klein, J., specially concurring).
To determine whether this "anomaly" was intended by the Legislature, we must examine the actual text of sections893.135(1)(c)1 (the drug trafficking statute), 893.03(2)(a)1.j, Florida Statutes (Supp. 1996) (hydrocodone listed in Schedule II), and 893.03(3)(c)4 (hydrocodone listed in Schedule III). This is because "[l]egislative intent must be determined primarily from the language of the statute." Overstreet v.State, 629 So.2d 125, 126 (Fla. 1993).
Although it has been asserted that the appellate courts' differing interpretations of section 893.135(1)(c)1 alone render the statute ambiguous, see Dial, 730 So.2d at 813 (Klein, J., specially concurring), we find that a "strict construction" of these criminal statutes, as is mandated by section 775.021(1), Florida Statutes (1995), supports the interpretation given by the First District and Second District.See Johnson v. State, 602 So.2d 1288, 1290 (Fla. 1992). "The rules of statutory construction require courts to strictly construe criminal statutes, and that `when the language is susceptible to differing constructions, [the statute] shall be construed most favorably to the accused.'" Id.
(quoting § 775.021(1), Fla. Stat. (1989)).
In resolving the issue before us, it is necessary to review the statutory provisions of all three schedules of controlled substances as well as the trafficking statute because the trafficking statute specifically refers to, and thus incorporates by reference Schedule II substances. See Preface at viii, Fla. Stat. (1995) ("[A] cross-reference to a specific statute incorporates the language of the referenced statute as it existed at the time the reference was enacted."); Van Peltv. Hilliard, 75 Fla. 792, 808-09, 78 So. 693, 698 (1918);see generally Forsythe v. Longboat Key BeachErosion Control Dist., 604 So.2d 452, 455-56 (Fla. 1992) (related provisions of a statute should be read in pari materia in order to achieve a consistent whole). Further, Schedules II and III must be read together because both schedules state that hydrocodone is listed in that schedule "unless listed in another schedule." §§ 893.03(2)(a), .03(3)(c).
We turn first to the definitions and descriptions of the substances in Schedules I, II and III, mindful that the trafficking statute applies only to Schedule I and II substances. Hydrocodone is not included in the list of Schedule I narcotics. Schedule I narcotics are those controlled substances with the highest potential for abuse and have "no currently accepted medical use in treatment." § 893.03(1). *Page 4 
Hydrocodone is, however, classified in the criminal statutes as both a Schedule II and a Schedule III controlled substance. In fact, hydrocodone is the only drug listed in the trafficking statute at issue that is found in both Schedule II and Schedule III.
A substance listed in Schedule II has "a high potential for abuse and has a currently accepted but severely restricted medical use in treatment in the United States, and abuse of the substance may lead to severe psychological or physical dependence." § 893.03(2). Schedule II provides, in pertinent part, that "unless listed in anotherschedule," "[h]ydrocodone" is a Schedule II substance. § 893.03(2)(a)1.j (emphasis supplied).
In contrast, Schedule III substances are considered to have:
 [A] potential for abuse less than the substances contained in Schedules I and II and ha[ve] a currently accepted medical use in treatment in the United States, and abuse of the substance may lead to moderate or low physical dependence or high psychological dependence or, in the case of anabolic steroids, may lead to physical damage.
§ 893.03(3). Hydrocodone is also included in Schedule III:
 (c) Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation containing limited quantities of any of the following controlled substances or any salts thereof:
 . . . .
 4. Not more than 300 milligrams of hydrocodone per 100 milliliters or not more than 15 milligrams per dosage unit, with recognized therapeutic amounts of one or more active ingredients which are not controlled substances.
§ 893.03(3)(c)4 (emphasis supplied).
Each schedule states that hydrocodone is listed in that schedule "unless listed in another schedule." §§893.03(2)(a), .03(3)(c). Therefore, the express statutory terms require that Schedules II and III be read with reference to one another. See Preface, Fla. Stat.; Van Pelt, 75 Fla. at 808-09, 78 So. at 698. The Schedule III definition specifically provides that if the amount of hydrocodone is not more than "300 milligrams of hydrocodone per 100 milliliters or not more than 15 milligrams per dosage unit," then it is a Schedule III substance. Because Schedule II includes hydrocodone not listed in another schedule, it follows that only hydrocodone in amounts in excess of fifteen milligrams per dosage unit or 300 milligrams per 100 milliliters can be a Schedule II substance.
It is further significant that Schedule III does not specify that the aggregate weight of the dosage units containing hydrocodone should be considered in order to determine whether the hydrocodone is a Schedule III substance. We are not at liberty to add words to statutes that were not placed there by the Legislature. See In re Order on Prosecutionof Criminal Appeals, 561 So.2d 1130, 1137 (Fla. 1990). The tablets of Lorcet in this case contained less than fifteen milligrams of hydrocodone per dosage unit. Because Schedule III specifically provides that if "any material, compound,mixture or preparation" containing less than fifteen milligrams per dosage unit of hydrocodone is a Schedule III drug, the tablets of Lorcet possessed by Hayes that contained only 7.5 milligrams of hydrocodone per dosage unit were Schedule III substances.
The State, while conceding that this concentration of hydrocodone per dosage unit brings the substance charged within the ambit of Schedule III, argues that the trafficking statute nevertheless applies because it prohibits the sale or possession of four grams or more of any mixture containing hydrocodone. Thus, because the total aggregate weight of the forty tablets exceeded four grams, the State argues *Page 5 
Hayes was properly charged under the statute.[4]
However, this Court must be guided primarily by the statutory language employed when determining the legislative intent.See Overstreet, 629 So.2d at 126. Thus, we return to section 893.135(1)(c)1, the drug trafficking statute in this case, to determine if it contains language authorizing the construction urged by the State and adopted by the Fourth and Fifth Districts. According to the language of the statute at issue here, possession of "4 grams or more of any . . . hydrocodone . . . as described in s. 893.03(1)(b) [ScheduleI] or (2)(a) [Schedule II], or 4 grams or more of any mixture containing any such substance" is punishable under the trafficking statutes. § 893.135(1)(c)1 (emphasis supplied). The phrase, "as described in s. 893.03(1)(b) or (2)(a) [Schedules I or II]," restricts the applicability of the trafficking statute to only those drugs described in Schedule I or Schedule II. Therefore, the drug trafficking statute prohibits the possession of 4 grams or more of any Schedule I or II drug "or 4 grams or more of any mixture containingsuch substance." § 893.135(1)(c)1 (emphasis supplied).
Indeed, the Fourth District recognized that the drug trafficking statute applies only to Schedule I and Schedule II illegal substances. See Hayes, 720 So.2d at 1096. However, the Fourth District focused on the meaning of "mixture" in concluding that it was not the amount of hydrocodone per dosage unit but the aggregate weight of the tablets seized which controlled. See Hayes, 720 So.2d at 1097. We, however, conclude that the statute must be read strictly with the focus on the term "such," which restricts the phrase "any mixture," by referring back to the restrictive phrase "as described in s. 893.03(1)(b) [Schedule I] or (2)(a) [Schedule II]." Thus, a close reading of the statutory language reveals that "such mixture" applies only to mixtures containing Schedule I or II substances.
In conclusion, after considering these interrelated statutes in pari materia, as we are required to do, we conclude that the interpretation given to the trafficking statute and to the statutory provisions of Schedules II and III by the First and Second Districts is most consistent with a strict construction of the applicable statutes. We hold that because the Lorcet tablets in this case contain less than fifteen milligrams of hydrocodone per dosage unit, the Lorcet tablets Hayes possessed are Schedule III substances. Because section 893.135(1)(c)1 prohibits the unlawful possession of any Schedule I or Schedule II drug, or any mixture containing a Schedule I or Schedule II drug, that section does not apply to Hayes' actions in this case. Therefore, the trial court properly granted Hayes' motion to dismiss the trafficking charge against her.
Based on the foregoing, we quash the Fourth District's decision in this case, disapprove Baxley, and approveHolland and Perry.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, LEWIS and QUINCE, JJ., concur.
[1] See Wilson v. State, 724 So.2d 696 (Fla. 5th DCA); review granted, 732 So.2d 330 (Fla. 1999),Harris v. State, 726 So.2d 330 (Fla. 5th DCA),review granted, 732 So.2d 326 (Fla. 1999); Statev. Bates, 24 Fla. L. Weekly D116 (Fla. 4th DCA Dec. 23, 1998), review granted, No. 94,741 (Fla. May 18, 1999);Swihart v. State, 721 So.2d 810 (Fla. 5th DCA 1998),review granted, 729 So.2d 394 (Fla. 1999); Statev. Falkenstein, 720 So.2d 1143 (Fla. 4th DCA 1998),review granted, 729 So.2d 390 (Fla. 1999), andreview granted, 732 So.2d 329 (Fla. 1999); Johnson v.State, 23 Fla. L. Weekly D2419 (Fla. 4th DCA Oct. 28, 1998),review granted, No. 94,801 (Fla. May 11, 1999);Potts v. State, 710 So.2d 1387 (Fla. 5th DCA),review granted, 727 So.2d 909 (Fla. 1998), which are all pending before this Court on the same conflict issue.
[2] We recognize that section 893.135(1)(c), Florida Statutes (1993), the statute at issue in State v. Holland,689 So.2d 1268 (Fla. 1st DCA 1997), did not specifically mention the term "hydrocodone." However, that version of the statute is the same in all other respects as the version at issue in this case, and our reading of the current version renders this difference insignificant. Other courts have also implicitly recognized the insignificance of this distinction by relying onHolland in cases where the newer version of the statute was at issue. See State v. Wells, 23 Fla. L. Weekly D2000 (Fla. 2d DCA Aug. 26, 1998), reviewgranted, 727 So.2d 911 (Fla. 1998); State v.Alleman, 23 Fla. L. Weekly D2000 (Fla. 2d DCA Aug. 26, 1998), review granted, 727 So.2d 911 (Fla. 1998);State v. Perry, 716 So.2d 327 (Fla. 2d DCA),review granted, 727 So.2d 911 (Fla. 1998), which are also pending before this Court on the same conflict issue.
[3] See also State v. Rera, 23 Fla. L. Weekly D2260 (Fla. 2d DCA Oct. 2, 1998), reviewgranted, 727 So.2d 911 (Fla. 1999); State v.Stein, 718 So.2d 920 (Fla. 2d DCA 1998), reviewgranted, 727 So.2d 911 (Fla. 1999).
[4] The mathematical calculation to reach this figure is as follows: each tablet of Lorcet weighs 757.5 milligrams (750 milligrams of Tylenol plus 7.5 milligrams of hydrocodone). Thus, forty tablets weigh an aggregate of 30 grams (757.5 x 40 = 30,300 milligrams or 30.3 grams), but contain an aggregate of only .3 grams of hydrocodone (7.5 milligrams x 40 = 300 milligrams or .3 grams). *Page 6