772 So.2d 1 (2000)
James EAGLE, Appellant,
v.
STATE of Florida, Appellee.
No. 2D98-58.
District Court of Appeal of Florida, Second District.
July 7, 2000.
Rehearing Denied September 29, 2000.
Brett McIntosh of Kay, McIntosh, and Gold, Sarasota, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Tonja R. Vickers, Assistant Attorney General, Tampa, for Appellee.
WHATLEY, Judge.
In this appeal of his conviction of trafficking in illegal drugs, James Eagle contends that the trial court erred in granting his motion to dismiss only in part and in denying his motion to suppress. We find no error in the trial court's denial of Eagle's motion to suppress. We also find no error in the trial court's partial denial of Eagle's motion to dismiss, which left the charge of trafficking in oxycodone intact. We write to express our reason for affirming the trial court's rulings because our affirmance brings us into express and direct conflict with Travis v. State, 754 So.2d 59 (Fla. 5th DCA 2000).
Eagle became the target of a controlled buy set up by the Bradenton Beach Police Department after a detective was advised by a confidential informant of proven reliability *2 that Eagle was selling prescription drugs. Subsequent to the controlled buy, which took place at Eagle's vehicle, Eagle was stopped and ultimately arrested. A search of his vehicle produced a cloth bag containing a large amount of prescription drugs. Eagle was charged with, among other offenses, trafficking in illegal drugs in violation of section 893.135(1)(c)1, Florida Statutes (Supp.1996). He filed a motion to dismiss the trafficking charge on the ground that, pursuant to State v. Holland, 689 So.2d 1268 (Fla. 1st DCA 1997), the amount of drugs found in his possession did not fall within the ambit of the trafficking statute. The trial court granted the motion with regard to the hydrocodone found in Eagle's possession, but not with regard to the oxycodone found in his possession.
Section 893.135(1)(c)1 provides as follows:
Any person who knowingly sells, purchases, manufactures, delivers or brings into the state, or who is in actual or constructive possession of 4 grams or more of any morphine, opium, oxycodone, hydrocodone, hydromorphone, or any salt, derivative, isomer, or salt of an isomer thereof, including heroin, as described in s. 893.03(1)(b) or (2)(a), or 4 grams or more of any mixture containing any such substance, but less than 30 kilograms of such substance or mixture, commits a felony of the first degree, which felony shall be known as "trafficking in illegal drugs."
In Hayes v. State, 750 So.2d 1 (Fla. 1999), the supreme court approved the First District's interpretation of this statute in Holland. The issue in both cases was how to determine whether prescription tablets containing hydrocodone as well as a noncontrolled substance met the trafficking threshold of section 893.135(1)(c)1. The supreme court pointed out that section 893.135(1)(c)1 applies only to substances listed on Schedules I and II. See §§ 893.03(1)(b) and 893.03(2)(a). Hydrocodone is listed on both Schedules II and III. See §§ 893.03(2)(a) and 893.03(3)(c)(4). Only Schedule III, however, sets forth an amount restriction: "Not more than 300 milligrams of hydrocodone per 100 milliliters or not more than 15 milligrams per dosage unit ...." § 893.03(3)(c)4. Consequently, the supreme court concluded that "only hydrocodone in amounts in excess of fifteen milligrams per dosage unit or 300 milligrams per 100 milliliters can be a Schedule II substance." Hayes, 750 So.2d at 4. Thus, because the prescription tablets in Hayes and Holland contained less than 15 milligrams of hydrocodone per tablet, i.e., "per dosage unit," they were Schedule III substances and not subject to the trafficking statute. See Hayes, 750 So.2d at 5; Holland, 689 So.2d at 1270.
In Hayes, the supreme court rejected the State's argument, which argument was also made and rejected in Holland, that although the concentration of hydrocodone per dosage unit in the tablets in that case brought the substance under Schedule III, the trafficking statute applied nevertheless because it prohibits the possession of 4 grams or more of any mixture containing hydrocodone. The court held that the trafficking statute applies only to mixtures containing Schedule I or II substances. See 750 So.2d at 5. Consequently, we interpret Hayes to mean that the various prescription drugs possessed by Eagle containing a mixture of oxycodone, which is listed only on Schedule II, and a noncontrolled substance (usually acetaminophen) are to be measured by their aggregate weight in determining whether a trafficking amount is present. This interpretation is supported by the fact that Schedule II contains no per dosage unit language as does Schedule III. See § 893.03(2)(a). This interpretation is also supported by the fact that the supreme court stated that if the tablets in Hayes's possession were classified as Schedule II substances, Hayes would be subject to a mandatory minimum term of 25 years' imprisonment and a $500,000 fine under subsection 893.135(1)(c)1 c. See 750 So.2d at 2. That subsection describes the penalty for trafficking in 28 grams or more but less than 30 kilograms of the controlled substances listed on Schedules I and II. Thus, in *3 determining the amount of hydrocodone in Hayes's possession if the hydrocodone were a Schedule II substance, the supreme court multiplied the weight of each tablet, 757.5 milligrams (750 milligrams of acetaminophen plus 7.5 milligrams of hydrocodone), by the number of tablets, 40, for a total weight of 30,300 milligrams or 30.3 grams. See id. at 5 n. 4. This methodology is consistent with the proscription in section 893.135(1)(c)1. against trafficking, inter alia, in "4 grams or more of any mixture" containing Schedule I or II substances.
Our holding in this case conflicts with the Fifth District's holding in Travis, 754 So.2d 59, which also involved the issue of trafficking in oxycodone. In Travis, the Fifth District calculated the amount of oxycodone in Travis's possession by multiplying the amount of oxycodone in each Roxicet tablet, 5 milligrams, by the number of tablets, 30, and held that the total of .15 of a gram did not bring Travis within the ambit of the trafficking statute. We disagree with the Fifth District's calculation of the amount of oxycodone in Travis's possession because, as we have explained, in calculating Schedule II substances for purposes of section 893.135(1)(c)1, the supreme court indicated that the total weight of each tablet should be multiplied by the number of tablets.
Accordingly, we affirm Eagle's conviction of trafficking in illegal drugs in violation of section 893.135(1)(c)1. We note that at the hearing at which the trial court announced its ruling granting Eagle's motion to dismiss with regard to the hydrocodone, defense counsel agreed with the State that the remaining amount of oxycodone tablets found in Eagle's vehicle met the trafficking threshold.
Affirmed.
BLUE, A.C.J., and SCHEB, JOHN M., (Senior) Judge, Concur.