RAMIREZ, J.
 

 Erik and Kris Rodriguez appeal their conviction and sentence. They claim that there was insufficient evidence produced at trial to justify their convictions. Because we find there was substantial, competent evidence to support the jury’s verdict, we affirm.
 

 Abel Rodriguez is the owner of several pharmacies located in Miami-Dade, as well as an internet pharmacy. The names of the local pharmacies are Nuria’s and Santa Clara. The internet pharmacy was known as Rxhotdeals. Erik and Kris Rodriguez are Abel’s sons. On occasion, Erik and Kris would work in their father’s pharmacy as part-time pharmacy technicians.
 

 On October 22, 2004, police observed Michael Hernandez, a Nuria’s employee, load some parcels into his vehicle and drive to a building adjacent to the Santa Clara pharmacy, referred to in the briefs and during trial as the 2290 building. On October 25, 2004, police stopped another employee, Gus Rodriguez, as he drove away from the same building. He informed the officers that he was transporting medication to a local parcel service for shipment. The officers seized the medication. After interrogating Hernandez and another employee, the officers obtained a search warrant. That same day, the officers executed the warrant at the 2290 building. There they photographed and seized several items including pill bottles, pill counting machines, labels, and medications. None of the items seized were connected directly to Erik and Kris, nor were they present when the police conducted the search.
 

 Officers subsequently arrested Erik and Kris, and questioned them as to their involvement in the pharmacy’s activities. They were later charged on numerous counts including: (1) conspiracy to commit trafficking in illegal drugs; (2) racketeering; (3) dispensing drugs without a pharmacist’s license; (4) dispensing drugs without a prescription; (5) forgery of prescription or legend drug labels; and (6) adulterating or misbranding prescription drugs.
 

 Erik and Kris went to trial where several former pharmacy employees testified as to the brothers’ involvement in the pharmacy’s operations. The jury ultimately found them not guilty on every count ex
 
 *328
 
 cept the adulteration and misbranding charges.
 

 On appeal, we review a motion for judgment of acquittal de novo and determine whether it contains substantial competent evidence which, if believed, will support the trial court’s finding of guilt.
 
 See Pagan v. State,
 
 830 So.2d 792, 803 (Fla.2002);
 
 Dawson v. State,
 
 338 So.2d 242, 243 (Fla. 3d DCA 1976). “Generally, an appellate court will not reverse a conviction which is supported by competent, substantial evidence.”
 
 Pagan,
 
 830 So.2d at 803. Our concern on appeal is “whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the [ruling] on appeal, there is substantial, competent evidence to support the [ruling].”
 
 Banks v. State,
 
 732 So.2d 1065, 1067 n. 5 (Fla.1999). We believe there is.
 

 The State charged the appellants with violating sections 499.0691(3)(a) and (3)(b), Florida Statutes (2005). The relevant portions of these sections make it a second degree felony to knowingly manufacture, repackage, sell, deliver, or hold or offer for sale any drug that is
 
 adulterated
 
 or
 
 mis-branded
 
 or has otherwise been rendered unfit for human or animal use.
 
 See
 
 § 499.0691(3)(a), Fla. Stat. (2005). Erik and Kris argue that the misbranding conviction cannot be sustained because the State failed to produce evidence that either of them “misbranded any drugs.” However, the statute criminalizes more than direct misbranding.
 

 Misbranding is a term of art and is statutorily defined. According to section 499.007(12), Florida Statutes (2005), a drug is misbranded:
 

 (12) If it is a drug intended for use by humans which is a habit forming drug or which, because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drugs; or which is limited by an effective application under s. 505 of the federal act to use under the professional supervision of a practitioner licensed by law to prescribe such drug, unless it is dispensed only:
 

 (a) Upon the written prescription of a practitioner licensed by law to prescribe such drug;
 

 (b) Upon an oral prescription of such practitioner, which is reduced promptly to writing and filled by the pharmacist; or
 

 (c) By refilling any such
 
 written or oral
 
 prescription, if such refilling is authorized by the prescriber either in the original prescription or by oral order which is reduced promptly to writing and filled by the pharmacist.
 

 Like the word misbranded, the word “dispense” is also a term of art.
 

 “Dispense” means the
 
 transfer of possession
 
 of one or more doses of a medicinal drug
 
 by a pharmacist to the ultimate consumer
 
 or her or his agent. As an element of dispensing, the pharmacist shall, prior to the actual physical transfer, interpret and assess the prescription order for potential adverse reactions, interactions, and dosage regimen she or he deems appropriate in the exercise of her or his professional judgment, and the pharmacist shall certify that the medicinal drug called for by the prescription is ready for transfer. The pharmacist shall also provide counseling on proper drug usage, either orally or in writing, if in the exercise of her or his professional judgment counseling is necessary. The actual sales transaction and delivery of such drug shall not be considered dispensing.
 

 
 *329
 
 § 465.003(6), Fla. Stat. (2005) # (emphasis added).
 

 Hydrocodone, one of the drugs discovered during the raid of the internet pharmacy, is a Schedule II and III narcotic, and a controlled substance.
 
 See
 
 § 893.03, Fla. Stat. (2010). “A substance listed in Schedule II has ‘a high potential for abuse and has a currently accepted but severely restricted medical use in treatment in the United States, and abuse of the substance may lead to severe psychological or physical dependence.’ ”
 
 Hayes v. State,
 
 750 So.2d 1, 4 (Fla.1999). Under section 499.007(12), hydrocodone would be mis-branded unless it is correctly dispensed.
 

 At trial, the State produced several witnesses who testified as to the internet pharmacy’s procedures. The witnesses testified that, although there was a pharmacist who oversaw the prescriptions dispensed from the Nuria’s location, no pharmacist was present to review the prescriptions dispensed from the internet pharmacy. One witness, Michel Hernandez-Rivero, testified that he saw Erik and Kris working in the internet pharmacy.
 

 STATE: And who else was there?
 

 HERNANDEZ-RIVERO: In the early afternoons, I’d say about 1 o’clock or so, Kris and Eric would come and, basically, fill prescriptions also.
 

 STATE: Did they fill them in the internet section?
 

 HERNANDEZ-RIVERO: Yeah.
 

 [[Image here]]
 

 STATE: Okay. So you saw Kris and Eric working over in the internet section? Did you ever see a pharmacist in the internet section?
 

 HERNANDEZ-RIVERO: No.
 

 At one point, the internet pharmacy operation was moved from the Nuria’s location to a nearby building. This abandoned storefront was referred to at trial as “2290”. Hernandez-Rivero testified that there was never a pharmacist present at the 2290 address.
 

 STATE: Was there a pharmacist at 2290 Southwest 8th Street?
 

 HERNANDEZ-RIVERO: No.
 

 STATE: Ever?
 

 HERNANDEZ-RIVERO: No.
 

 STATE: Are you a pharmacist?
 

 HERNANDEZ-RIVERO: Absolutely not.
 

 This lack of oversight is sufficient to render the pharmaceuticals statutorily mis-branded. Because a pharmacist did not review the prescription drugs being shipped from the internet pharmacy, the drugs were not dispensed. There was merely a transfer of possession by unsupervised pharmacy techs to the consumer. This blatantly ignores the language of section 465.003(6) which requires that a pharmacist transfer the drugs to the consumer.
 

 The essence of section 499.007(12) is that drugs not properly “dispensed” are, per se, misbranded. It is our opinion that the shipping of the drugs in the manner described by Hernandez-Rivero rendered the drugs misbranded.
 

 Additionally, we find that there is sufficient evidence in the record to show that at the very least, Erik and Kris knowingly repackaged and delivered the mis-branded drugs.
 

 STATE: Did you ever see Erik and Kris at 2290?
 

 HERNANDEZ-RIVERO: Yes.
 

 STATE: And what were they doing there?
 

 HERNANDEZ-RIVERO: Filling prescriptions.
 

 STATE: How many times did you see them there?
 

 
 *330
 
 HERNANDEZ-RIVERO: I’d say about 3 to 4 times a week. They would show up about 1 o’clock or so — 1:30, and stay until they were done.
 

 Another witness, Hector Barquín, also testified that Erik and Kris worked at the 2290 location.
 

 STATE: And when you worked at 2290, did you ever see your cousins there, Kris and Erik?
 

 BARQUIN: Yes.
 

 [[Image here]]
 

 STATE: What did you see them doing? BARQUIN: Whatever needed to be done. Pretty much the same thing I would do.
 

 STATE: Fill the bottles?
 

 BARQUIN: If that needed to be done.
 

 STATE: Place labels on them?
 

 BARQUIN: If that needed to be done.
 

 STATE: Put them in packages?
 

 BARQUIN: Yes, sir.
 

 STATE: And did they take them to UPS and FedEx?
 

 BARQUIN: Yes, sir. I don’t know if every time, but I know they have.
 

 Both Erik and Kris testified at trial that they have a history of working alongside their father. Erik, for example, testified that he began working in his father’s pharmacy at age fifteen and continued to do so until his arrest nine years later.
 

 Furthermore, Erik’s hands-on working knowledge of the operations of the pharmacy rendered him well aware of what was legally impermissible. He admitted that he knew what actions constituted a violation of the law.
 

 DEFENSE: And if you ever saw people counting pills without a licensed pharmacist present, you would know that was illegal correct?
 

 ERIK RODRIGUEZ: Yes.
 

 We thus conclude that the record before us contains substantial, competent evidence to support the jury’s verdict that Erik and Kris knowingly packaged and delivered misbranded drugs. Therefore, we affirm the judgment of conviction and sentence.
 

 Affirmed.