IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

RYAN WILDER,

     Appellant,

v.

STATE OF FLORIDA,

     Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-5705

Opinion filed June 15, 2016.

An appeal from the Circuit Court for Clay County.
Don H. Lester, Judge.

Nancy A. Daniels, Public Defender, and Courtenay H. Miller, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Thomas H. Duffy, Assistant Attorney General, Tallahassee, for Appellee.

WETHERELL, J.

The appellant, Ryan Wilder, was convicted of first-degree felony murder, second-degree felony murder, and trafficking in methamphetamine. He raises four issues in this direct appeal, only one of which merits discussion: whether the

liquid by-product from the manufacture of the methamphetamine was properly included when calculating the weight of the methamphetamine for purposes of meeting the threshold weight for trafficking. We affirm this issue for the reasons that follow, and we affirm the other issues raised by Wilder without discussion.

In February 2012, after hours of surveillance, four deputies with the Clay County Sheriff's Office approached the front door of a residence that was suspected to be the site of a methamphetamine lab to conduct a "knock and talk." Other deputies were positioned around the house. After several knocks, the door opened, and a man inside the house started shooting at the deputies. One deputy was killed, and another was injured. The shooter then ran out the back door where he was shot and killed by a deputy who was stationed in the back yard. During the incident, the deputies commanded the other occupants, including Wilder, to exit the house. Wilder complied and was taken into custody without incident.

After everyone was outside, the deputies entered the house and found items indicative of a methamphetamine lab. They collected items containing a total weight of approximately 1 gram of methamphetamine at various stages of the production process, along with a glass vase containing 26.2 grams of a liquid by-product left over from the manufacturing process. The liquid by-product was toxic, but it contained a trace amount (less than 1%) of methamphetamine and

2

there was testimony that the liquid could be reused to manufacture additional methamphetamine.

Based on the total weight of the liquid by-product and the other items containing methamphetamine, Wilder was charged with trafficking in methamphetamine under section 893.135(1)(f)1., Florida Statutes (2011). He was also charged with first-degree felony murder (for the deputy's death) and second-degree felony murder (for the shooter's death), with the trafficking offense serving as the predicate felony for both murder charges.[1] The jury found Wilder guilty of these charges, and the trial court sentenced him to two consecutive terms of life in prison for the murders and a concurrent 30-year term for trafficking in methamphetamine.

On appeal, Wilder argues that the 26.2 grams of liquid by-product should not have been included in calculating the total weight of methamphetamine for the trafficking offense because even though the liquid contained a trace amount of methamphetamine, it was not a consumable or marketable mixture. If Wilder is correct, then his trafficking conviction must be reversed because the weight of the remaining methamphetamine recovered at the scene was well below the 14 gram

---

[1] Wilder was also charged with possession of a firearm by a convicted felon and attempted second-degree murder (three counts) of the other deputies at the front door who were shot at. The trial court granted a judgment of acquittal on the possession of a firearm charge, and the jury acquitted Wilder of the attempted murder charges.

threshold for trafficking, and if Wilder's trafficking conviction is reversed, his first-degree and second-degree felony murder convictions must also be reversed because the trafficking offense was the predicate felony for those convictions.[2] See §§ 782.04(1)(a), (3)(a), Fla. Stat.

Resolution of the issue raised by Wilder begins – and ends – with the plain language of the applicable provisions of section 893.135: subparagraph (1)(f)1. and subsection (6). See Trinidad v. Fla. Peninsula Ins. Co., 121 So. 3d 433, 439 (Fla. 2013) ("When construing a statute, this Court attempts to give effect to the Legislature's intent, looking first to the actual language used in the statute and its plain meaning."); M.D. v. State, 993 So. 2d 1061, 1063 (Fla. 1st DCA 2008) ("[W]hen a statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent, or resort to rules of statutory construction to ascertain intent.").

Section 893.135(1)(f)1. provides in pertinent part:

Any person who knowingly sells, purchases, manufactures, delivers,

---

[2] This would be a hollow victory for Wilder because he would still be subject to a mandatory life sentence since the jury was instructed on – and the evidence was more than sufficient to support convictions for – the lesser included offenses of possession of less than 14 grams of methamphetamine and third-degree felony murder of the deputy. See §§ 893.13(1)(a)1., Fla. Stat. (2011) (possession of methamphetamine is a second-degree felony); 782.04(4), Fla. Stat. (third-degree felony murder is an unlawful killing that occurs while the defendant is engaged in a non-enumerated felony); 782.065, Fla. Stat. (defendant convicted of third-degree felony murder "shall be sentenced to life imprisonment without eligibility for release" if the victim is a law enforcement officer).

4

or brings into this state, or who is knowingly in actual or constructive possession of, <u>14 grams or more of</u> . . . methamphetamine as described in section 893.03(2)(c)4., or of <u>any mixture</u>[3] <u>containing . . . methamphetamine</u> . . . in conjunction with other chemicals and equipment utilized in the manufacture of . . . methamphetamine commits a felony of the first degree, which felony shall be known as "trafficking in amphetamine," . . . .

(emphasis added). And, section 893.135(6) provides in pertinent part:

For the purpose of clarifying legislative intent regarding the weighing of a mixture containing a controlled substance described in this section, the weight of the controlled substance is the total weight of the mixture, including the controlled substance and any other substance in the mixture.

There is no ambiguity in these statutes. Section 893.135(1)(f)1. clearly contemplates the punishment for trafficking of "any" mixture of methamphetamine and does not set a minimum threshold amount of methamphetamine that must be part of the mixture, and section 893.135(6) clearly states that, when a mixture contains a controlled substance, the total weight of the mixture is used, not just the weight of the controlled substance in the mixture. Accordingly, when these statutes are read together, it is clear that so long as there is some amount – no matter how small – of methamphetamine in the mixture, the weight of the methamphetamine for purposes of the thresholds in the trafficking statute is the total weight of the mixture.

---

[3] "Mixture" is defined by section 893.02(16) to mean "any physical combination of two or more substances."

5

We find no merit in Wilder's argument that these otherwise clear statutes become ambiguous when read in conjunction with subsection (7) of section 893.135, which provides:

> For the purpose of further clarifying legislative intent, the Legislature finds that the opinion in Hayes v. State, 750 So. 2d 1 (Fla. 1999) [Hayes II] does not correctly construe legislative intent. The Legislature finds that the opinions in State v. Hayes, 720 So. 2d 1095 (Fla. 4th DCA 1998) [Hayes I] and State v. Baxley, 684 So. 2d 831 (Fla. 5th DCA 1996) correctly construe legislative intent.

This argument is based on the flawed premise that subsection (7) reflects a legislative intent to adopt the "market approach" discussed in Chapman v. United States, 500 U.S. 453 (1991), and thus, exclude the weight of any unmarketable portion of a mixture from the weight of the controlled substance.

Subsection (7) does not mention the "market approach" or Chapman, and on its face, the statute simply reflects the Legislature's disapproval of the result of the Florida Supreme Court's decision in Hayes II in favor of the result reached by the district courts in Hayes I and Baxley: i.e., that a defendant can be charged with trafficking in hydrocodone based on the aggregate weight of the tablets in the defendant's possession, regardless of the dosage of hydrocodone in each tablet. Indeed, the legislative staff analysis of the bill through which subsection (7) was enacted demonstrates that the Legislature was primarily focused on remedying Hayes II's "effective nullification" of the offense of trafficking in hydrocodone:

6

> [Hayes II] effectively nullified the trafficking provision as it relates to hydrocodone because, almost without exception, the trafficking that occurs in hydrocodone is trafficking in prescription medications containing not more than 15 mg. of hydrocodone per dosage unit. It is not clear from the Hayes decision if the Court was aware of the preclusive effect of its decision.

Fla. S. Comm. on Crim. Just., CS for SB 232 (2001) Staff Analysis,[4] at 5 (Mar. 7, 2001). To that end, the analysis explained that the purpose of subsection (7) was to indicate that "hydrocodone or mixtures containing hydrocodone, whether listed in Schedule II or Schedule III are, for the purpose of charging trafficking, to be weighed no differently than any other controlled substances, e.g., cocaine or cut cocaine." Id. at 8.

Moreover, to adopt the interpretation of subsection (7) advocated by Wilder, we would have to interpret subsection (6) of section 893.135 to read in pertinent part: ". . . the weight of the controlled substance is the total weight of the marketable or usable portion of the mixture, including the controlled substance and any other substance in that portion of the mixture." We have no authority to judicially amend the statute in this (or any other) manner. See Genesis Ministries, Inc. v. Brown, 186 So. 3d 1074, 1078 (Fla. 1st DCA 2016) (citing Am. Bankers Life Assurance Co. of Fla. v. Williams, 212 So. 2d 777, 778 (Fla. 1st DCA 1968)).

---

4  The staff analysis is available at http://archive.flsenate.gov/data/session/2001/ Senate/bills/ analysis/pdf/2001S0232.CJ.pdf.

7

In this case, the liquid found in the glass vase was a "mixture" of methamphetamine because it contained methamphetamine in addition to the waste by-product from the manufacturing process. Accordingly, based on the plain language of sections 893.135(1)(f)1. and 893.135(6), the jury was properly instructed on and allowed to consider the liquid by-product in determining whether Wilder was guilty of the trafficking offense,[5] and because the combined weight of

_____

[5] This conclusion is not undermined by the methamphetamine cases relied on by Wilder arising under the federal counterpart to section 893.135. First and foremost, the federal statutes discussed in those cases differ from the applicable Florida statute in a significant respect because the federal statutes do not contain language similar to that in section 893.135(6) specifying how the weight of a mixture containing a controlled substance is to be calculated. Additionally, the federal circuits are split on the question of whether the weight of the unmarketable by-product resulting from the production of methamphetamine should be included in the weight of the methamphetamine under the applicable federal statutes, with a slight majority of the cases holding that the weight of the by-product mixture should be included. Compare United States v. Kuenstler, 325 F.3d 1015 (8th Cir. 2003) (including unusable toxic waste solution containing small amount of methamphetamine in total weight for sentencing purposes based on plain language of statute and determination that waste products are necessarily part of manufacturing process), United States v. Richards, 87 F.3d 1152 (10th Cir. 1996) (en banc) (rejecting "market" approach to calculating weight of liquid solution of methamphetamine because nowhere in the applicable federal statutes are the words "marketable" or "usable mixture"), United States v. Palacios-Molina, 7 F.3d 49 (5th Cir. 1993) (including waste by-products in total weight determination because they were necessary to manufacturing process), and United States v. Walker, 960 F.2d 409 (5th Cir. 1992) (including entire weight of toxic liquid containing small percentage of methamphetamine in computing sentence), with United States v. Stewart, 361 F.3d 373 (7th Cir. 2004) (holding that "only the amount of pure drug contained in an unusable solution, or the amount of usable drug that is likely to be produced after that unusable solution is fully processed, may be included in the drug quantity under the statute"), United States v. Newsome, 998 F.2d 1571 (11th Cir. 1993) (excluding weight of unusable sludge mixture containing only trace

8

all of the liquid and other methamphetamine found at the scene exceeded the statutory weight threshold for a trafficking offense, Wilder was properly convicted of that offense and the two felony murders predicated on that offense.

Accordingly, we affirm Wilder's convictions and sentences.

AFFIRMED.

KELSEY, J., and DEMPSEY, ANGELA, Associate Judge, CONCUR.

---

amount of methamphetamine), and United States v. Jennings, 945 F.2d 129 (6th Cir. 1991) (holding that if methamphetamine mixture contained poisonous by-products then entire weight of mixture is not considered because entire mixture could not be distributed). See also United States v. Long, 958 F. Supp. 2d 1334 (M.D. Fla. 2013) (surveying the conflicting federal circuit court decisions). And, finally, the federal sentencing guidelines for drug crimes define "mixture or substance" for sentencing purposes to specifically exclude materials such as the "waste water from an illicit laboratory used to manufacture a controlled substance" that must be separated from the controlled substance before it can be used. See U.S.S.G. § 2D1.1, cmt. n. 1 (2012).