IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

GENESIS MINISTRIES, INC.,

     Appellant,

v.

GREGORY S. BROWN, AS
PROPERTY APPRAISER FOR
SANTA ROSA COUNTY,
FLORIDA, STAN COLIE
NICHOLS, AS TAX
COLLECTOR FOR SANTA
ROSA COUNTY, FLORIDA,
AND MARSHALL
STRANBURG, AS EXECUTIVE
DIRECTOR OF THE
DEPARTMENT OF REVENUE
OF THE STATE OF FLORIDA,

     Appellee.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-1310

_____/

Opinion filed February 16, 2016.

An appeal from the Circuit Court for Santa Rosa County.
John F. Simon, Jr., Judge.

Douglas L. Smith of Burke, Blue, Hutchison, Walters & Smith, P.A., Panama City,
for Appellant.

Thomas M. Findley and Robert J. Telfer III of Messer Caparello, P.A., Tallahassee
for Appellees Gregory S. Brown and Stan Colie Nichols.

Pamela Jo Bondi, Attorney General, and Timothy E. Dennis, Chief Assistant
Attorney General, Tallahassee for Appellee Marshall Stranburg.

WETHERELL, J.

Genesis Ministries, Inc. (Genesis) appeals the dismissal of its complaint challenging the ad valorem taxes imposed on its property for 2005 to 2013. Genesis argues that the trial court erred in finding that its challenge was barred by section 194.171(2), Florida Statutes. We agree. Accordingly, we reverse the dismissal order and remand for further proceedings.

## I. Factual and Procedural Background

Genesis owned property in Santa Rosa County on which it alleged that it "continuously operated a Christian school and church . . . since before 2005 through February of 2013." The property was granted a "religious exemption"[1] from ad valorem taxes from 2005 to 2012.

On February 26, 2013, the property appraiser for Santa Rosa County recorded in the county's public records a Notice of Tax Lien for Ad Valorem Exemption and/or Limitation Exclusion (Tax Lien) against the property. The Tax Lien – which, according to the complaint, was recorded "with no warning or due process of any kind" – claimed that Genesis owed ad valorem taxes for 2005 to 2012, plus penalties

---

[1] See Art. VII, § 3(a), Fla. Const. ("Such portions of property as are used predominately for . . . religious . . . purposes may be exempted by general law from taxation."); § 196.196, Fla. Stat. (establishing the criteria to be used by the property appraiser in determining whether property is being used predominately for religious purposes).

2

and interest, amounting to almost $298,000. The Tax Lien asserted that Genesis "was not legally entitled to receive [the religious exemption] because [it was] Not Qualified for Ad Valorem Exemption <u>for Reasons Set Forth in the Exemption Removal Notice</u>" (emphasis added), but the Exemption Removal Notice was not attached to the Tax Lien nor is it contained in the record on appeal.

Genesis alleged that, in addition to recording the Tax Lien, the property appraiser also "revoked" its religious exemption for 2013. The complaint does not allege how or when this occurred, but it is undisputed that when the property appraiser certified the county's 2013 tax rolls on October 18, 2013, Genesis' property was "listed [on the rolls] as fully taxable with none of its previous exemption."

At some point (the complaint does not allege when), Genesis asked the property appraiser for an explanation of his decision to revoke its religious exemption and "back-assess" its property. In response, the attorney for the property appraiser sent Genesis a letter dated November 15, 2013, explaining the factual and legal basis for the property appraiser's determination that Genesis has not been entitled to the religious exemption since 2004. The letter concluded by stating that the property appraiser's determination "will not be changed."

In August 2014, after selling the property, Genesis sent the tax collector for Santa Rosa County a check for approximately $352,000 to pay the 2013 taxes and

3

the amount set forth in the Tax Lien. The letter accompanying the check stated that the payment was being made "under protest" and that "[a] lawsuit will be forthcoming seeking a full refund."

Thereafter, on September 9, 2014, Genesis filed a complaint against the property appraiser, the tax collector, and the executive director of the Department of Revenue (DOR) (collectively "Appellees"), seeking a refund of the taxes paid under protest. The complaint disputed the facts asserted by the property appraiser in the November 2013 letter, asserted that Genesis' property was entitled to the religious exemption from 2005 to 2013, and alleged that the property appraiser violated the law when he assessed the property without the exemption for 2013 and when he "back-assessed the Property for 2005 through 2012 by filing the Tax Lien." The complaint also alleged that the property appraiser's actions violated the Equal Protection, Establishment, and Free Exercise Clauses in the state and federal constitutions, as well as the Religious Freedom Restoration Act codified in chapter 761, Florida Statutes.

The property appraiser and DOR filed motions to dismiss the complaint.[2] The motions argued that the complaint was barred by section 194.171(2) because, with respect to the 2005 to 2012 taxes, the complaint was filed more than 60 days after

---

[2] The tax collector subsequently filed a "notice of joinder" in the motion to dismiss filed by the property appraiser.

the Tax Lien was recorded, and with respect to the 2013 taxes, the complaint was filed more than 60 days after the 2013 tax rolls were certified.

The trial court granted the motions to dismiss, finding that all of Genesis' claims were barred by section 194.171(2). With respect to the 2005 to 2012 taxes, the court found that the recording of the Tax Lien triggered the 60-day period in section 194.171(2) because the lien was equivalent to a denial of the exemption for those years, and pursuant to Ward v. Brown, 894 So. 2d 811 (Fla. 2004), the denial of an exemption is subject to the requirements of section 194.171(2). With respect to the 2013 taxes, the court found that the complaint was barred because it was filed more than 60 days after the 2013 tax rolls were certified.

This appeal followed.

## II. Analysis

We review the dismissal order under the de novo standard of review because the question of whether a complaint should be dismissed is a question of law. See City of Gainesville v. Dep't of Transp., 778 So. 2d 519, 522 (Fla. 1st DCA 2001). And, like the trial court, our review is confined to the well-pled allegations in the complaint and its attachments. Id.

Section 194.171(2) provides in pertinent part that "[n]o action shall be brought to contest a tax assessment after 60 days from the date the assessment being contested is certified for collection under s. 193.122(2) . . . ." This is a "jurisdictional

5

statute of nonclaim" that bars suits filed after the period expires, and it applies regardless of the ground on which the assessment is being challenged. See Ward, 894 So. 2d at 814; Markham v. Neptune Hollywood Beach Club, 527 So. 2d 814, 816 (Fla. 1988); see also § 194.171(6), Fla. Stat. ("The requirements of subsections (2), (3),[3] and (5)[4] are jurisdictional. No court shall have jurisdiction in such cases until after the requirements of both subsections (2) and (3) have been met. A court shall lose jurisdiction of a case when the taxpayer has failed to comply with the requirements of subsection (5)."). However, we have previously held that the 60-day period in section 194.171(2) does not begin to run if the property appraiser fails to strictly comply with the applicable statutory notice requirements. See Chihocky v. Crapo, 632 So. 2d 230, 232-33 (Fla. 1st DCA 1994).

Here, although it is undisputed that Genesis' complaint was filed more than 60 days after the Tax Lien was recorded and more than 60 days after the 2013 tax rolls were certified, Genesis contends that the trial court erred in dismissing its complaint pursuant to section 194.171(2) because [A] with respect to the 2005 to 2012 taxes, the 60-day period in that statute is not applicable, and [B] with respect

---

[3] "Before an action to contest a tax assessment may be brought, the taxpayer shall pay to the collector not less than the amount of the tax which the taxpayer admits in good faith to be owing." § 194.171(3), Fla. Stat.

[4] "No action to contest a tax assessment may be maintained, and any such action shall be dismissed, unless all taxes on the property assessed in years after the action is brought, which the taxpayer in good faith admits to be owing, are paid before they become delinquent." § 194.171(5), Fla. Stat.

to the 2013 taxes, the property appraiser failed to provide Genesis the statutorily-required notice that its religious exemption was denied for 2013. We will address each argument in turn.

### A. 2005 to 2012 Taxes

Genesis argues that the Tax Lien that "back-assessed" the 2005 to 2012 taxes on its property is not subject to the 60-day period in section 194.171(2) because the statute does not apply to actions challenging tax liens. We agree.

Section 194.171(2), by its clear and unambiguous terms, applies only to actions contesting "a tax assessment" and it requires such actions to be filed within 60 days after the assessment is "certified for collection under s. 193.122(2)." A tax lien is not a tax assessment, and it is not certified for collection under section 193.122(2).

Section 193.122 has nothing to do with tax liens. This statute establishes the procedures pursuant to which the property appraiser certifies (i.e., finalizes) the annual tax rolls, and in subsection (2), the statute requires the property appraiser to publish "notice of the date and fact of . . . certification" on the property appraiser's website, in his or her office, and in the local newspaper. The certification of the tax rolls is the culmination of a process that affords property owners considerable due process before taxes are imposed on their property. See, e.g., § 200.069, Fla. Stat. (detailing the notice of proposed property taxes that must be provided to property

7

owners each year); §§ 194.011-.037, Fla. Stat. (providing for administrative review of assessments prior to the certification of the tax rolls).

The Tax Lien recorded against Genesis' property was not part of the property appraiser's certification of the county's tax rolls for 2013 (or any other year) under section 193.122. Instead, it was based on the property appraiser's retrospective determination under section 196.011(9)(a)[5] that Genesis was not entitled to the tax exemption it received from 2005 to 2012.

Section 194.171 does not refer to section 196.011(9)(a) nor does it mention tax liens. To interpret section 194.171(2) in the manner urged by Appellees (as the

---

[5] This statute, commonly referred to as the "claw-back statute," provides in pertinent part:

> The owner of any property granted an exemption who is not required to file an annual application or statement shall notify the property appraiser promptly whenever the use of the property or the status or condition of the owner changes so as to change the exempt status of the property. If any property owner fails to so notify the property appraiser and the property appraiser determines that for any year within the prior 10 years the owner was not entitled to receive such exemption, the owner of the property is subject to the taxes exempted as a result of such failure plus 15 percent interest per annum and a penalty of 50 percent of the taxes exempted. Except for homestead exemptions controlled by s. 196.161, the property appraiser making such determination shall record in the public records of the county a notice of tax lien against any property owned by that person or entity in the county, and such property must be identified in the notice of tax lien. Such property is subject to the payment of all taxes and penalties. Such lien when filed shall attach to any property, identified in the notice of tax lien, owned by the person who illegally or improperly received the exemption.

8

trial court did), we would have to re-write the statute so that it would read: "No action shall be brought to contest a tax assessment <u>or tax lien</u> after 60 days from the date the assessment being contested is certified for collection under s. 193.122(2), <u>60 days after the lien is recorded under s. 196.011(9)(a)</u>, or 60 days after the date a decision is rendered concerning such assessment by the value adjustment board . . . ." We have no authority to re-write the statute in this (or any other) manner. <u>See</u> <u>Am. Bankers Life Assurance Co. of Fla. v. Williams</u>, 212 So. 2d 777, 778 (Fla. 1st DCA 1968) ("This court is without power to construe an unambiguous statute in a way which would extend, modify, or limit its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power."). Instead, we must construe the statute as it is written, and as written, the statute simply does not apply to actions challenging tax liens.

We recognize that, in <u>Ward</u>, the Florida Supreme Court held that the 60-day period in section 194.171(2) "applies broadly to taxpayers' actions challenging the assessment of taxes against their property regardless of the legal basis of the challenge." <u>See</u> 894 So. 2d at 812. However, we find no support in <u>Ward</u> for the proposition that section 194.171(2) should be construed to apply to actions challenging tax liens.

The taxpayers in <u>Ward</u> argued that section 194.171(2) did not bar their suit challenging the imposition of taxes on their property because they were challenging

9

the "classification" of the property as taxable rather than the property appraiser's valuation of the property.  Id. at 813.  The Court rejected this "semantic argument" and held that taxpayers are bound by section 194.171(2) "whether they are claiming an exemption or claiming that the assessors' action is illegal, unlawful, or void as an improper 'classification' or for some other reason."  Id. at 816.  The Court based its holding on public policy considerations, explaining that section 194.171(2) is part of the comprehensive statutory scheme for ad valorem taxation that is "intended to facilitate tax collecting and to put individual taxation issues on the fast-track to resolution so that counties may continue to function and count on tax revenues to do so."  Id. at 815.  Accord Chihocky, 632 So. 2d at 232 (explaining that the legislative intent and public policy underlying section 194.171(2) "is to ensure prompt payment of taxes due and making available revenues that are not disputed").

Unlike Ward which arose from a challenge to a current-year tax assessment, this case involves an effort by the property appraiser to "claw-back" taxes that he retrospectively determined that Genesis should have paid in prior years.  The county's budget for those prior years was set taking into account the exemption of Genesis' property, and any taxes collected pursuant to the Tax Lien will have no impact on those prior years' budgets.  Accordingly, the policy concerns underlying Ward are not present with respect to the Tax Lien's "back-assessment" of Genesis' property for 2005 to 2012.

10

Furthermore, basic notions of due process – i.e., notice and an opportunity to be heard – weigh against interpreting section 194.171(2) to apply to actions challenging tax liens. There is no requirement that the property appraiser give the property owner actual notice of the tax lien, and unlike valuation, classification, and exemption determinations which can be appealed to the value adjustment board before the tax rolls are certified and the 60-day period in section 194.171(2) is triggered, there is no procedure for the property owner to obtain administrative review of the property appraiser's determination under section 196.011(9)(a) before the tax lien is recorded in the public records. Accordingly, if section 194.171(2) was construed to apply to tax liens, the only opportunity a property owner would have to challenge the property appraiser's "back-assessment" of taxes under section 196.011(9)(a) would be by filing suit within 60 days after the tax lien is recorded in the public records. We find it highly unlikely that the Legislature intended such a draconian result, which would effectively require property owners to routinely (at least every 60 days) check the public records to determine whether a tax lien has been recorded against their property.

In sum, because the 60-day period in section 194.171(2) does not apply to actions challenging a tax lien, the trial court erred in dismissing the Genesis complaint challenging the 2005 to 2012 taxes.[6]

## B. 2013 Taxes

Genesis contends that the trial court erred in dismissing its challenge to the 2013 taxes under section 194.171(2) because the property appraiser did not provide the notice required by section 196.193(5)[7] before "revoking" its religious exemption

[6] In reaching this decision, we did not overlook the property appraiser's "tipsy coachman" argument that dismissal of Genesis' challenge to the 2005 to 2012 taxes was also mandated by section 194.171(5). That statute divests the trial court of jurisdiction over an action contesting a tax assessment "unless all taxes on the property assessed in years after the action is brought . . . are paid before they become delinquent." § 194.171(5), Fla. Stat. (emphasis added). However, on its face, section 194.171(5) has no application here because Genesis' complaint was filed in 2014 and there were no taxes assessed on the property in the years "after the action [was] brought" – i.e., after 2014 – that were unpaid or delinquent. The case relied on by the property appraiser, Washington Square Corp. v. Wright, 687 So. 2d 1374 (Fla. 1st DCA 1997), is not contrary authority; that case involved assessments for 1994 and 1995 that became delinquent after the taxpayer's suit was filed in 1993. Accord Bystrom v. Diaz, 514 So. 2d 1072 (Fla. 1987) (approving decision affirming dismissal of suit challenging 1982 assessment because, while the suit was pending, the 1984 taxes became delinquent); Higgs v. Armada Key West Ltd. P'ship, 903 So. 2d 303 (Fla. 3d DCA 2005) (granting petition for writ of prohibition because section 194.171(5) divested the trial court of jurisdiction over suit challenging 2001 assessment when, after the suit was filed, the taxpayer failed to pay or timely challenge the 2002 assessment).

[7] This statute provides:

(5)(a) If the property appraiser determines that any property claimed as wholly or partially exempt under this section is not entitled to any exemption or is entitled to an exemption to an extent other than that requested in the application, he or she shall notify the person or

12

for 2013. Appellees respond that the Tax Lien, coupled with the November 2013 letter, provided Genesis the requisite notice that its religious exemption was denied for 2013. On the present record, we agree with Genesis.

Contrary to Appellees' argument, the Tax Lien does not purport to deny Genesis' religious exemption for 2013. The Tax Lien, by its terms, only refers to the 2005 to 2012 tax years and it asserts that Genesis "was not" (past tense) entitled

---

organization filing the application on such property of that determination in writing on or before July 1 of the year for which the application was filed.

(b) The notification must state in clear and unambiguous language the specific requirements of the state statutes which the property appraiser relied upon to deny the applicant the exemption with respect to the subject property. The notification must be drafted in such a way that a reasonable person can understand specific attributes of the applicant or the applicant's use of the subject property which formed the basis for the denial. The notice must also include the specific facts the property appraiser used to determine that the applicant failed to meet the statutory requirements. If a property appraiser fails to provide a notice that complies with this subsection, any denial of an exemption or an attempted denial of an exemption is invalid.

(c) All notifications must specify the right to appeal to the value adjustment board and the procedures to follow in obtaining such an appeal. Thereafter, the person or organization filing such application, or a duly designated representative, may appeal that determination by the property appraiser to the board at the time of its regular hearing. In the event of an appeal, the property appraiser or the property appraiser's representative shall appear at the board hearing and present his or her findings of fact. If the applicant is not present or represented at the hearing, the board may make a determination on the basis of information supplied by the property appraiser or such other information on file with the board.

to the religious use exemption that it received in those years. Additionally, even if the Tax Lien could somehow be construed to deny Genesis' religious exemption for 2013, it does not provide any explanation as to why the exemption was denied as required by section 196.193(5)(b),[8] nor does it advise Genesis of its right to appeal the property appraiser's determination to the value adjustment board as required by section 196.193(5)(c). Similarly, although the November 2013 letter does provide the factual and legal basis for the property appraiser's determination that Genesis is not entitled to the religious exemption, it does not advise Genesis of its right to appeal that determination to the value adjustment board and, moreover, the letter was issued <u>after</u> the July 1 deadline in section 196.193(5)(a) and <u>after</u> the certification of the 2013 tax rolls.

At oral argument, the property appraiser argued for the first time that the notice requirements in section 196.193(5) do not apply in this case because that statute only applies to the denial of an initial application for an exemption, not the "revocation" of a previously-granted exemption. We reject this argument because it does not give effect to the entire statute.

---

[8] We recognize that the Tax Lien states that Genesis was not entitled to the religious exemption "For Reasons Stated in the Exemption Removal Notice," but as noted above, the Exemption Removal Notice was not attached to the Tax Lien nor is it contained in the record on appeal.

14

Notwithstanding the title of section 196.193 ("Exemption applications; review by property appraiser."), the scope of the statute is not limited to initial applications for an exemption or exemptions that require an annual application. The notice provisions in section 196.193 broadly apply when "the property appraiser determines that any property claimed as wholly or partially exempt under this section is not entitled to any exemption." § 196.193(5)(a), Fla. Stat.

Moreover, section 196.193(1) specifically addresses property "exempted from the annual application requirement," which includes property used for religious purposes.[9] Paragraph (1)(a) provides that such property "shall be returned, but shall be granted tax exemption by the property appraiser." Paragraph (1)(b) authorizes the property appraiser to deny a religious exemption if he or she determines that the property is being held for speculative purposes or being used for other than religious purposes, but under paragraph (1)(c), if the exemption is denied, the property owner may appeal the decision to the value adjustment board "in the manner prescribed for appealed tax exemptions."

---

[9] See § 196.011(4), Fla. Stat. ("When any property has been determined to be fully exempt from taxation because of its exclusive use for religious . . . purposes and the application for its exemption has met the criteria of s. 196.195, the property appraiser may accept, in lieu of the annual application for exemption, a statement certified under oath that there has been no change in the ownership and use of the property."); see also § 196.011(9)(a), Fla. Stat. (authorizing the county commission to "waive the requirement that an annual application or statement be made for exemption of property within the county after an initial application is made and the exemption granted").

Section 194.011(3)(d) prescribes the procedure for appealing the denial of a tax exemption to the value adjustment board and ties the appeal period to the notice provided by the property appraiser: "With respect to an issue involving the denial of an exemption, . . . the petition must be filed . . . on or before the 30th day following the mailing of the notice by the property appraiser under . . . s. 196.193." The only notice-mailing requirements in section 196.193 are those contained in subsection (5). Thus, by virtue of section 196.193(1)(c)'s implicit reference to the value adjustment board appeal procedures in section 194.011(3)(d), we conclude that section 196.193(1)(c) necessarily contemplates that the property appraiser is required to provide notice in accordance with subsection (5) when denying an existing religious exemption.

The parties have not cited, nor has our research located any cases directly addressing the consequences of the property appraiser's failure to provide notice of the denial of an exemption on the 60-day period in section 194.171(2). However, we considered a somewhat analogous situation in Chihocky.

In Chihocky, the property owner filed a suit challenging the denial of her application to classify her property as agricultural. See 632 So. 2d at 231. The suit was filed more than 60 days after the tax rolls were certified and, pursuant to section 194.171(2), the trial court granted summary judgment in favor of the property appraiser. Id. at 232. We reversed because there were disputed issues of fact as to

16

whether the property appraiser complied with the notice requirements in section 193.122(2) for certification of the tax rolls.  Id. 233.

Similar to the argument made by Appellees in this case, the property appraiser in Chihocky argued that his compliance with the statutory notice requirements was irrelevant because the property owner's suit was jurisdictionally barred by section 194.171(2).  Id. at 232.  We rejected this argument, explaining that it would render the mandatory notice provisions in the applicable statute meaningless and it was inconsistent with the legislative intent:

> Appellee's interpretation of the jurisdictional time limit would make gratuitous the notice provision of section 193.122(2) which says that the property appraiser shall provide notice at the time and in the manner specified. Despite the mandatory language, the notice requirement would be meaningless under appellee's interpretation because the only potential plaintiffs having standing to challenge the defective notice — those whose assessments were allegedly improper and who did not bring suit within 60 days — would be barred from the courts. It is improbable that the Legislature intended that a property appraiser could certify and extend the tax roll, fail to provide the required notice by publication and posting, wait 61 days and then be assured that no court could exercise jurisdiction over a taxpayer's claim of incorrect or invalid assessment.
>
> In addition, in light of the severe consequences imposed upon the expiration of 60 days, strict compliance with the statutory notice requirements would appear to be consistent with the legislative purpose.

Id. at 233 (emphasis in original).

The same is true here.  The Legislature has made clear that the property appraiser's failure to comply with the notice requirements in section 196.193(5) has

17

consequences: "If a property appraiser fails to provide a notice that complies with this subsection, any denial of an exemption or an attempted denial of an exemption is invalid." § 196.193(5)(b), Fla. Stat. This statutory provision would be meaningless if, as Appellees argue, Genesis was barred from challenging the denial of its exemption for 2013 when it was not provided notice of the denial simply because its property was listed on the 2013 tax rolls and Genesis did not file suit within 60 days after the tax rolls were certified.

Accordingly, as the record presently stands, the trial court erred in finding that Genesis' challenge to the 2013 taxes was barred by section 194.171(2). That said, we do not foreclose the possibility that further development of the record may establish that the property appraiser did indeed provide notice to Genesis before July 1, 2013, explaining why its religious use exemption was denied for 2013 and advising Genesis of its right to appeal that determination to the value adjustment board. If so, then, as Genesis conceded at oral argument, section 194.171(2) will bar Genesis' challenge to the 2013 taxes because Ward held that the denial of an exemption is a "tax assessment" for purposes of that statute and it is undisputed that the Genesis' complaint was filed more than 60 days after the 2013 tax rolls were certified.

18

## III. Conclusion

For the reasons stated above, the trial court erred in finding that Genesis' suit was barred by section 194.171(2).  Accordingly, we reverse the dismissal order and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

MAKAR and WINOKUR, JJ., CONCUR.