VILLANTI, Judge.
 

 Enterprise Leasing Company appeals from the final summary judgment entered in favor of John and Judy Demartino, which judgment finally adjudicated the reformation count of the Demartinos’ complaint and completely disposed of the case as to Windsor Group. Because the evidence submitted by the Demartinos in support of them claim of mutual mistake was incompetent, the trial court erred in relying on that evidence to enter the final summary judgment. Therefore, we reverse and remand for further proceedings.
 

 The facts here are fairly straightforward. The Demartinos were involved in an auto accident with Gary Simat on June 29, 1996. Gary was driving a vehicle owned by Enterprise and leased by his wife, Lisa. At the time, Gary and Lisa carried automobile liability insurance with Windsor Group.
 

 In February 1998, the Demartinos wanted to settle only Judy’s claims under the Windsor Group policy issued to Gary and Lisa. In exchange for payment of $25,000, both Demartinos signed a release that specifically provided that they would
 

 release, and forever discharge Gary Si-mat, Lisa M. Simat, American Deposit Insurance Company, and Windsor Group and his, her, their, and its successors and assigns, and each of them heirs, executors, and administrators,
 
 and all other persons, firms, and, corporations,
 
 of and from any and all claims, demands, rights, and causes of action, of whatsoever kind or nature, arising from or by reason of any and all known and unknown, foreseen and unforeseen bodily
 
 *713
 
 and personal injuries, loss and damage to property, and the consequences thereof, resulting, and to result, from an automobile accident which happened on or about the 29 day of June, 1996 at or near SR 93 and CR 896, Naples, FL.
 

 (Emphasis added.) The release contains language stating that the personal injury claims of John Demartino and his consortium claim based on Judy’s injuries are not released. The names “Gary Simat, Lisa M. Simat, American Deposit Insurance Company, and Windsor Group” were typed on the form. The remaining language concerning releasees was preprinted.
 

 Despite this release, on November 10, 1999, the Demartinos sued Gary and Enterprise for the personal injuries of both John and Judy Demartino.
 
 [1]
 
 In response to Judy’s claims, Enterprise raised the affirmative defense of release, contending that the 1998 release of Judy’s claims was a general release, that Enterprise was an intended beneficiary of that release, and that Judy’s claims were therefore barred. On November 20, 2001, the trial court granted summary judgment in favor of Enterprise as to Judy’s claims on the basis of the 1998 release.
 

 In response to this ruling, the Demarti-nos sought and obtained leave of court to file an amended complaint. In the amende ed complaint, the Demartinos added a count for reformation of the 1998 release,' naming only Windsor Group as a defendant to that count. The reformation count alleged that the 1998 release was never intended to release any entity other than Windsor Group, that the general release language was included by mutual mistake, and that the court should permit the 1998 release to be reformed to exclude the release of any entities other than Windsor Group.
 

 The Demartinos subsequently moved for summary judgment on the reformation count. In support of their motion, they filed affidavits stating that when they signed the release in 1998, they intended to release only Windsor Group so as to obtain the insurance proceeds under the policy issued to Gary and Lisa. They alleged that they never intended to release any other party, and they specifically did not intend to release Enterprise. The De-martinos also filed the affidavit of their former attorney, who attested to the same intent on the part of the Demartinos.
 

 In an effort to establish Windsor Group’s intent in entering into the 1998 release, the Demartinos took the deposition of Mary Anne Ragoza-Miller, who was identified by Infinity Insurance Company, the successor to Windsor Group, as the person with the most knowledge about the 1998 release. Dining her deposition, Ragoza-Miller testified that she had never worked for Windsor Group and that she was not employed by either Infinity or Windsor Group when the 1998 release was negotiated and signed. She testified that she was identified as the person with the most knowledge of the 1998 release only because she was the adjuster currently assigned to the claim. While she testified that she had no personal knowledge that would contradict the Demartinos’ allegations in their affidavits, her testimony also clearly established that she had no personal knowledge of the intent or motivations of Windsor Group when it entered into the 1998 release.
 

 After considering this evidence and hearing argument, the trial court granted summary judgment in favor of the Demar-
 
 *714
 
 tinos, reforming the 1998 release to release only Windsor Group. Enterprise now appeals this decision, contending that the trial court erred in finding that the De-martinos had established the mutual mistake necessary to support the reformation count as a matter of law.
 

 As an initial matter, we note that Enterprise has standing to challenge the entry of this final summary judgment. This court has held that an intended third-party beneficiary of a release has standing to enforce that release.
 
 See Olsen v. O’Connell,
 
 466 So.2d 352, 354 (Fla. 2d DCA 1985). This holding arises out of general principles of contract law, which provide that an intended third-party beneficiary of a contract may sue to enforce that contract.
 
 See, e.g., Marianna Lime Prods. Co v. McKay,
 
 109 Fla. 275, 147 So. 264, 265 (1933);
 
 M-I LLC v. Util. Directional Drilling, Inc.,
 
 872 So.2d 403, 404-05 (Fla. 3d DCA 2004). Further, this court and others have held that when a release clearly states that it releases “all other persons and/or corporations who are or may be liable” for the subject damages, the other persons and corporations may be third-party beneficiaries of that release and thus have standing to enforce the release.
 
 See, e.g., Hester v. Gatlin,
 
 332 So.2d 660, 662 (Fla. 2d DCA 1976);
 
 Quarterman v. City of Jacksonville,
 
 347 So.2d 1036, 1038 n. 2 (Fla. 1st DCA 1977);
 
 Dean v. Bennett M. Lifter, Inc.,
 
 336 So.2d 393, 395 (Fla. 3d DCA 1976).
 

 Here, as noted above, the 1998 release signed by the Demartinos clearly released not only Gary and Lisa, Windsor Group, and another specifically named insurer, but also “all other persons, firms, and corporations, of and from any and all claims, demands, rights, and causes of action ... arising from ... an automobile accident which happened on or about the 29 day of June, 1996 at or near SR 93 and CR 896, Naples, FL.” When the 1998 release was signed, the Demartinos knew that Enterprise owned the vehicle driven by Gary, and they signed the 1998 release containing this broad release language despite this knowledge. On these facts, Enterprise has at least a colorable claim to being a third-party beneficiary of the 1998 release, and it therefore has standing to enforce that release.
 

 Turning to the merits of the appeal, we must reverse the summary judgment in favor of the Demartinos because the record evidence failed to establish a mutual mistake. “A movant is entitled to summary judgment ‘if the pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials as would be admissible in evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.’ ”
 
 Estate of Githens ex rel. Seaman v. Bon Secours-Maria Manor Nursing Care Ctr., Inc.,
 
 928 So.2d 1272, 1274 (Fla. 2d DCA 2006) (quoting Fla. R. Civ. P. 1.510(c)). The “[supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and
 
 shall shoiv affirmatively that the affiant is competent to testify to the matters stated therein.”
 
 Fla. R. Civ. P. 1.510(e) (emphasis added). When a supporting affidavit does not comply with these requirements, it is legally insufficient to support the entry of summary judgment in favor of the moving party.
 
 See, e.g., W. Edge II v. Kunderas,
 
 910 So.2d 953, 954 (Fla. 2d DCA 2005) (noting that affidavit in support of action for reformation based on mutual mistake was incompetent when it contained allegations concerning matters about which the affiant could not have personal knowledge);
 
 In re Forfeiture of 1998 Ford Pickup, Identification No. lFTZXl767WNA3m7,
 
 779 So.2d 450, 451
 
 *715
 
 (Fla. 2d DCA 2000) (holding that when a supporting affidavit affirmatively showed on its face that the affiant was not competent to testify to the matters included in the affidavit, the trial court erred by relying on that affidavit when granting summary judgment);
 
 Zoda v. Hedden,
 
 596 So.2d 1225, 1226 (Fla. 2d DCA 1992) (holding that when the affidavit in support of the moving party's motion for summary judgment showed on its face that the affi-ant was incompetent to testify, the moving party had not met its burden and the burden did not shift to the opposing party to come forward with countervailing evidence).
 

 In this case, the Demartinos alleged that they were entitled to summary judgment on the reformation count because the 1998 release was the product of a mutual mistake. “A mistake is mutual when the parties agree to one thing and then, due to either a scrivener’s error or inadvertence, express something different in the written instrument.”
 
 Providence Square Ass’n v. Biancardi,
 
 507 So.2d 1366, 1372 (Fla.1987);
 
 see also DR Lakes Inc. v. Brandsmart U.S.A. of W. Palm Beach,
 
 819 So.2d 971, 974 (Fla. 4th DCA 2002) (“When an instrument is drawn and executed which is intended to carry into execution an agreement but which by mistake of the draftsman violates or does not fulfill that intention, equity will reform the instrument so as to conform to the intent of the parties.”);
 
 cf. Leo v. MacLeod,
 
 752 So.2d 627, 629 (Fla. 2d DCA 1999) (holding that a contract is voidable when there is a mistake by both parties when the contract is entered concerning a basic assumption upon which the contract was made). Thus, to prevail on their reformation count, the Demartinos were required to show that
 
 both
 
 they and Windsor Group intended to release
 
 only
 
 Windsor Group and that the release language stating otherwise was the result of inadvertence or a scrivener’s error.
 

 Here, the affidavits signed by the Demartinos and their counsel establish their intent to release only Windsor Group. However, no competent evidence established Windsor Group’s intent. Instead, the only evidence on that issue — the deposition testimony of Mary Anne Ragoza-Miller — is incompetent on its face. Rago-za-Miller testified in her deposition that she never worked for Windsor Group and that she had been employed by Infinity— Windsor Group’s successor — for only one year. She was not the adjuster who handled the Demartinos’ claim when the 1998 release was signed, and she had no file or documents related to their claim. She testified that she was designated as the person with the most knowledge of the' De-martinos’ claim only because “anybody else who may have handled it before is no longer with the company.” Ragoza-Miller did testify that she had no personal knowledge that would contradict anything in the Demartinos’ affidavits. However, it is readily apparent that she had no personal knowledge of Windsor Group’s intent in negotiating and signing the 1998 release because she did not become involved in the case until nine years after that release was signed.'
 

 In light of Ragoza-Miller’s lack of personal knowledge relating to Windsor Group’s intent when the 1998 release was signed, her deposition testimony, like the affidavit testimony at issue in
 
 West Edge II, In re Forfeiture of 1998 Ford Pickup,
 
 and
 
 Zoda,
 
 is not competent evidence of Windsor Group’s intent when it drafted and signed the 1998 release. Ragoza-Mil-ler’s testimony is thus incompetent to support the Demartinos’ claim of mutual mistake. Because the Demartinos presented no other competent evidence to establish Windsor Group’s intent, the trial court erred in entering summary judgment in their favor on their reformation count.
 

 
 *716
 
 In this appeal, Enterprise argues that this court should not only reverse the summary judgment in favor of the Demar-tinos, but also should order the trial court to enter summary judgment in its favor on remand. This we cannot do. The supreme court has held that when a release has both written and preprinted provisions concerning the intended releasees, the intent of the parties as to who is to be released is a question of fact.
 
 See Hurt v. Leatherby Ins. Co.,
 
 380 So.2d 432, 434 (Fla.1980) (holding that because the pre-printed language routinely included in releases was often “boilerplate” language that did not necessarily reflect the intent of the parties, the presence of that “boilerplate” language could not be construed
 
 as a matter of law
 
 to reflect the parties’ intent). Thus, when there are two types of release language — some written and some preprinted — within a single form, a latent ambiguity exists that requires the parties’ intent to be determined as a matter of fact.
 
 Id.
 

 Here, like the release at issue in
 
 Hurt,,
 
 the 1998 release contains both written and preprinted terms within a single form. Pursuant to
 
 Hurt,
 
 the “boilerplate” release of other entities cannot be construed to release Enterprise as a matter of law. Instead, the question of whether both the Demai’tinos and Windsor Group intended to release entities other than Windsor Group is a question of fact. Accordingly, on this record, Enterprise is not entitled to summary judgment in its favor on remand.
 

 Reversed and remanded for further proceedings.
 

 SILBERMAN, J., and DAKAN, STEPHEN L., Associate Senior Judge, Concur.
 

 [1]
 

 . Lisa Simat, as personal representative of the Estate of Gary Simat, was subsequently substituted as a parly defendant.