NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

SERENITY HARPER,  )
 )
        Appellant,  )
 )
v.  )  Case No. 2D17-4987
 )
GEICO GENERAL INSURANCE  )
COMPANY,  )
 )
        Appellee.  )
_____  )

Opinion filed March 1, 2019.

Appeal from the Circuit Court for
Hillsborough County; Martha J. Cook,
Judge.

David M. Caldevilla of de la Parte & Gilbert,
P.A., Tampa; and J. Daniel Clark of Clark &
Martino, P.A., Tampa, for Appellant.

Joshua J. Hartley, B. Richard Young, and
Jordan M. Thompson of Young, Bill, Boles,
Palmer & Duke, P.A., Tampa, for Appellee.


VILLANTI, Judge.

        Serenity Harper appeals the final summary judgment entered against her

and in favor of her insurance company, GEICO General Insurance Company, in this bad

faith case. The basis for the trial court's entry of judgment in favor of GEICO was its

conclusion that GEICO had timely paid Harper's claim within sixty days of when GEICO actually received Harper's civil remedy notice (CRN) filed pursuant to section 624.155, Florida Statutes (2013). However, because the final judgment is based on a misapplication of the provisions of section 624.155, we reverse.

Harper was involved in an automobile accident on June 30, 2013, in which she sustained serious injuries. GEICO insured both Harper and the at-fault driver, and Harper made claims under both the at-fault driver's liability coverage and her own underinsured motorist (UM) coverage. When her claims were not promptly paid, Harper filed suit against both the at-fault driver and GEICO on December 10, 2013. GEICO subsequently paid Harper the at-fault driver's liability limits under his policy. However, when GEICO continued to refuse to pay Harper the benefits under her UM policy, she electronically filed a CRN with the Department of Financial Services on December 18, 2013, and she mailed a copy to GEICO on that same date. GEICO contends that it actually received the mailed copy of the CRN on December 26, 2013.[1]

---

[1]There is some indication in the record that the Department electronically transmits CRNs directly to insurers when they are received; however, neither party introduced any evidence establishing this practice in support of their respective summary judgment motions. While GEICO argued that it did not receive notice of the CRN until it received Harper's mailed copy on December 26, it did not include a copy of the notice it received as part of its summary judgment evidence. See, e.g., Bryson v. Branch Banking & Tr. Co., 75 So. 3d 783, 786 (Fla. 2d DCA 2011) (holding that unauthenticated documents that are simply attached to a notice of filing are not admissible evidence that can properly be considered by the court when it is deciding a summary judgment motion); Morrison v. U.S. Bank, N.A., 66 So. 3d 387, 387 (Fla. 5th DCA 2011) (same); Bifulco v. State Farm Mut. Auto. Ins. Co., 693 So. 2d 707, 709 (Fla. 4th DCA 1997) (same). Further, the deposition testimony of GEICO's claims examiner was legally insufficient to establish the date on which GEICO received the CRN as her testimony did not establish that she had personal knowledge of that date. See Enter. Leasing Co. v. Demartino, 15 So. 3d 711, 714-15 (Fla. 2d DCA 2009) (noting that when the deponent had no personal knowledge of the information about which she purported to testify, her deposition testimony was not competent evidence that could be used in

- 2 -

Over a month later, on February 3, 2014, GEICO agreed to pay Harper her UM policy limit of $10,000. On that date, GEICO indicated that it would send payment and a release under separate cover, and GEICO mailed the settlement check to its attorneys on February 10, 2014; however, the check and release were not mailed to Harper's counsel until February 21, 2014, sixty-five days after the CRN was electronically filed with the Department and mailed to GEICO. Harper contends that this payment was untimely under section 624.155(3)(d), which requires that payment be made within sixty days of when the CRN is filed with the Department for the bad faith to be "cured." GEICO contends that its payment was timely under section 624.155(3)(a) because it did not actually receive the CRN until December 26, and payment was made within sixty days of that date. The trial court agreed with GEICO, which had the effect of barring Harper's bad faith claim. Hence, the trial court entered final summary judgment in favor of GEICO. Harper now seeks review of that ruling.

The discrete question facing this court in this case is when the sixty-day cure period for bad faith by an insurer begins. While perhaps not a model of clarity, section 624.155 provides, in pertinent part:

> (3)(a) As a condition precedent to bringing an action under this section, the department and the authorized insurer must have been given 60 days' written notice of the violation. If the department returns a notice for lack of specificity, the 60-day time period shall not begin until a proper notice is filed.
>
> . . . .

support of a motion for summary judgment). Hence, there was no competent record evidence before the trial court to establish what date GEICO actually received the CRN Harper had previously filed with the Department.

(c)  Within 20 days of receipt of the notice, the department may return any notice that does not provide the specific information required by this section, and the department shall indicate the specific deficiencies contained in the notice.  A determination by the department to return a notice for lack of specificity shall be exempt from the requirements of chapter 120.

(d)  No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected.

. . . .

(f)  The applicable statute of limitations for an action under this section shall be tolled for a period of 65 days by the mailing of the notice required by this subsection or the mailing of a subsequent notice required by this subsection.

(Emphasis added.)

Subsection 624.155(3)(d) plainly states that no action shall lie if the damages are paid or corrective action is taken within sixty days after the insured files the CRN.  Under current procedures, an insured files a CRN with the Department electronically.  See Fla. Admin. Code R. 69J-123.002(1).  And while the Department also requires the insured to print a copy of the completed CRN from the Department's website and send it to the insurer, the Department nevertheless considers the form to be "filed" when the insured clicks the "submit" button at the end of the electronic form. See Civil Remedy Notice of Insurer Violations FAQ, https://apps.fldfs.com/CivilRemedy/Help.aspx (follow "Continue" hyperlink; then follow "How do I file a Civil Remedy Notice?" hyperlink) (last visited Dec. 20, 2018).  At that time, the CRN is assigned a "filing number" and any changes must be made by clicking on "edit filing."  Hence, the requirements of section 624.155(3)(d) are met when the insured electronically files the CRN with the Department, and that action starts the sixty-

day cure period for the insurer.[2]  Therefore, we hold that the sixty-day cure period under section 624.155 begins when the CRN is electronically filed with the Department, and to avoid a bad faith action, the insurer must pay the claim or take corrective action within sixty days from the date the CRN is electronically filed.

In this appeal, as it did in the trial court, GEICO urges us to ignore the plain language of section 624.155(3)(d) and hold that the sixty-day cure period begins when the insurer actually receives the CRN.  For this proposition, it relies on the portion of section 624.155(3)(a) that says that the insurer must be "given 60 days' written notice of the violation," and Galante v. USAA Casualty Insurance Co., 895 So. 2d 1189, 1191 (Fla. 4th DCA 2005), in which the court said that USAA had cured its bad faith because it "paid the contractual amount due the insured within sixty days of receipt of the notice." We reject GEICO's argument for three reasons.

First, nothing in section 624.155 requires the insurer to actually receive the CRN before the sixty-day cure period begins.  To hold that the sixty-day cure period begins only upon actual receipt of the CRN would be to add language to the statute that is not there—something this court is prohibited from doing.  See, e.g., Hayes v. State, 750 So. 2d 1, 4 (Fla. 1999) ("We are not at liberty to add words to statutes that were not placed there by the Legislature.").

Second, the Galante decision did not turn on when the sixty-day cure period began.  Instead, the issue in that case was whether the pendency of the

---

[2]When the statute was originally enacted, an insured seeking to file a CRN would complete a paper form and mail copies to both the Department and the insurer. See Fla. Informational Bulletin 87-7, 1987 WL 1357228 (Sept. 24, 1987).  The Department changed to an internet form in 2008.  See Fla. Admin. Code R. 69J-123.002(1).

underlying uninsured motorist action tolled the sixty-day cure period. 895 So. 2d at 1191. Accordingly, the Galante decision does not support a holding that the sixty-day cure period begins only upon actual receipt of a CRN.

And third, starting the sixty-day cure period only upon actual receipt of the CRN would lead to conflicts with the application of section 624.155(3)(f). Subsection (3)(f) tolls the statute of limitations for a bad faith action for a period of sixty-five days from the date the CRN is mailed to the insurer. If the sixty-day cure period did not start to run until after actual receipt of the CRN, it would be possible in some cases for the statute of limitations to expire before the end of the sixty-day cure period. We will not interpret section 624.155 in such a way as to create such a potential conflict between its sections.[3] For each of these reasons, we reject GEICO's argument that the sixty-day cure period starts on the date the insurer actually receives the CRN.

Having determined that the sixty-day cure period begins when the CRN is electronically filed with the Department, we turn to the disposition of this case. The record that was before the trial court at summary judgment shows that the CRN was electronically filed with the Department on December 18, 2013. Sixty days from that date was February 16, 2014, which was a Sunday, making the end of the sixty-day cure period Monday, February 17, 2014. See Fla. R. Jud. Admin. 2.514(a)(1)(C) (providing that if the last day of a time period falls on a Saturday, Sunday, or legal holiday, the time

---

[3]We recognize that there could be potential due process implications if an insurer never actually received a CRN that was allegedly mailed by an insured. In such an instance, the insurer would not be foreclosed from raising the lack of any notice as an affirmative defense. However, the burden would be on the insurer to prove that it never received actual notice of the CRN, whether from the insured or the Department. Such facts are not present in this case, however, in which GEICO has affirmatively alleged that it received actual notice of the CRN on December 26, 2013.

- 6 -

period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday). GEICO did not mail the UM settlement payment to Harper's counsel until Friday, February 21, 2014.[4] Therefore, because GEICO did not pay Harper's claim within sixty days of the date the CRN was electronically filed with the Department, it did not pay the claim within the sixty-day cure period, and Harper was entitled to pursue her action for GEICO's alleged bad faith. Accordingly, final summary judgment in favor of GEICO was improper. Therefore, we reverse the final summary judgment and remand for further proceedings.

Reversed and remanded for further proceedings.

SILBERMAN, J., Concurs.
ROTHSTEIN-YOUAKIM, J., Concurs specially with opinion.

ROTHSTEIN-YOUAKIM, Judge, Concurring specially.

I join the majority's holding that the sixty-day statutory "cure period" of section 624.155(3)(a), Florida Statutes (2013), does not run from the date on which the insurer receives from the insured the mailed copy of the complete civil remedy notice (CRN). And although I cannot join its holding that notice was given to the insurer upon the insured's filing of the CRN with the Department of Financial Services because I do

---

[4]Section 624.155(2)(d) provides that damages must be "paid" or the circumstances giving rise to the violation corrected within sixty days of the filing of the CRN. An agreement to pay is not sufficient; actual payment is required. See, e.g., Paz v. Fid. Nat'l Ins. Co., 712 So. 2d 807, 809 (Fla. 3d DCA 1998).

not believe that we have enough information to make that determination, I agree that reversal is warranted.

Pursuant to the first sentence of subsection (3)(a), the Department and the authorized insurer "must have been given 60 days' written notice of the violation" before a civil action for bad faith may be brought. § 624.155(3)(a). "Must have been given" is not the same as "must have received"—although couched in passive voice, it maintains focus on the actor, not the party acted upon—and so by the plain language of that sentence, the insurer's "receipt" of the CRN is not the focus of the sixty-day calculus.

Moreover, pursuant to the second sentence of subsection (3)(a), "If the department returns a notice for lack of specificity, the 60-day time period shall not begin until a proper notice is filed." And pursuant to subsection (3)(d), "No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected." These two provisions, therefore, plainly contemplate calculation of the sixty-day period without regard to the insurer's receipt of the CRN.

As GEICO contends, subsection (3)(e) presumes that the insurer will, at some point, receive the notice that has been given. See § 624.155(3)(e) ("The authorized insurer that is the recipient of a notice filed pursuant to this section shall report to the department on the disposition of the alleged violation."). That subsection, however, is not tied to subsection (3)(a) either explicitly or conceptually. It does not come into play at the inception of the conflict but instead directs the insurer to take certain action down the road, upon the conflict's resolution. Thus, contrary to GEICO's further contention, subsection (3)(e) does not "lead[] to the logical conclusion that the sixty-day cure period begins when the insurer receives the CRN."

- 8 -

The refusal to hinge the commencement of the sixty-day period on the insurer's receipt of the notice is not only consistent with the language of the statute itself but is consistent with other presuit notice statutes. In particular, in statutes in which notice of intent to sue must be given by mail, it is the mailing of the notice—not the receipt of the notice—that triggers the countdown. See, e.g., § 766.106(2)(a), (3)(a), Fla. Stat. (2013) (requiring a claimant to notify prospective defendants "by certified mail, return receipt requested, of intent to initiate litigation for medical negligence" and providing that "[n]o suit may be filed for a period of 90 days after notice is mailed to any prospective defendant," during which period "the prospective defendant or the defendant's insurer or self-insurer shall conduct a review . . . to determine the liability of the defendant" (emphasis added)); § 400.0233(2), (3)(a), Fla. Stat. (2013) (requiring a claimant in a potential nursing home action to notify prospective defendants "by certified mail, return receipt requested, of an asserted violation of a resident's rights . . . or deviation from the standard of care" and providing that "[n]o suit may be filed for a period of 75 days after notice is mailed to any prospective defendant," during which period "the prospective defendants or their insurers shall conduct an evaluation of the claim to determine" liability and damages (emphasis added)); see also, e.g., § 173.04(1), Fla. Stat. (2013) (requiring that notice of intent to sue "be sent by registered mail" to designated parties at least thirty days before filing foreclosure suit to allow parties opportunity to pay (emphasis added)). Unlike these statutes, section 624.155 does not require that notice be given through any particular mechanism. But when notice is given through mailing, the plain language of section 624.155, when read

in the context of statutes with similar purpose, signals a legislative intent that the sixty-day period commence from the date of mailing.[5]

Because section 624.155 does not dictate the manner in which notice is to be given (apart from that it be written), I agree that we would not be foreclosed from considering whether notice could also be given in another manner, i.e., as Harper urges, through the filing of the CRN with the Department. But I do not think that we have been provided sufficient information in this case to determine whether filing with the Department concurrently gives notice to the insurer. Regardless, I also do not think that we need to answer that question today. The record in this case establishes that Harper's attorney mailed a copy of the CRN to GEICO on December 18, 2013—the same date that the CRN was filed with the Department. GEICO failed to pay Harper's claim within sixty days of that date. Therefore, I agree with the majority that the trial court erred in granting GEICO's motion for summary judgment and entering final judgment in its favor, and I join in the decision to reverse.

---

[5]And when notice is given through mailing, "The applicable statute of limitations for an action under this section shall be tolled for a period of 65 days by the mailing of the notice . . . or the mailing of a subsequent notice." § 624.155(3)(f).