DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STANLEY ZALESKI** and **DENISE ZALESKI,**
Appellants,

v.

**STATE FARM FLORIDA INSURANCE COMPANY,**
Appellee.

No. 4D19-2478

[February 24, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Nicholas Richard Lopane, Judge; L.T. Case No. CACE 17-022448 (03).

Matthew G. Struble and Christine D. Skubala of Struble, P.A., Fort Lauderdale, for appellants.

Paul L. Nettleton of Carlton Fields, Miami, for appellee.

DAMOORGIAN, J.

Stanley Zaleski and Denise Zaleski ("the Homeowners") appeal the trial court's entry of final summary judgment in favor of State Farm Florida Insurance Company ("State Farm") in their first-party bad faith action. For the reasons outlined below, we reverse.

The Homeowners own a home insured by State Farm. In 2017, while the subject policy was in effect, a water supply line burst in the Homeowners' home, causing significant damage throughout. The Homeowners subsequently filed a claim under the policy. State Farm acknowledged coverage, investigated the claim, determined the amount of the loss, and, after subtracting the applicable deductible, tendered payment to the Homeowners in the amount of $43,708.01.

On June 21, 2017, the Homeowners filed a civil remedy notice of insurer violations ("CRN") with the Florida Department of Financial Services ("DFS"), alleging violations of sections 624.155 and 626.9541, Florida Statutes (2017). One of those allegations was that State Farm failed to comply with the policy's loss settlement provision because it

"performed a cursory inspection of the property, failing to retain experts necessary to identify the repairs necessary to restore the property to its pre-loss condition" and gave a "low-ball estimate" that "failed to encompass all covered damages." The Homeowners asserted that State Farm could cure the violations alleged in the CRN "by issuing a payment for all contractual damages owed." It is undisputed that DFS accepted the CRN. Two weeks after filing the CRN, the Homeowners, through their public adjuster, submitted a detailed estimate to State Farm valuing the total amount of the loss at $168,575.11.

In a letter dated July 20, 2017, State Farm acknowledged receipt of the estimate, maintained that its initial evaluation was reasonable, and invoked appraisal pursuant to the policy. Section 1 of the policy provides that if the parties "fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal." The policy further provides that no action shall be brought against State Farm "unless there has been compliance with the policy provisions." On July 25, 2017, State Farm filed its response to the CRN with DFS, which consisted of the following statement: "[o]ur CRN response letter was sent to the insured's attorney on July 20, 2017." In neither its letter to the Homeowners nor its official response to the CRN did State Farm object to the sufficiency of the CRN. Aside from its initial payment, State Farm did not issue any further payments within sixty days of the CRN's filing and did not settle the claim.

The matter proceeded to appraisal and, on October 31, 2017, the appraisal panel determined that the total amount of loss was $163,479.10. Six days later, State Farm paid the Homeowners the amount of the appraisal award, minus the prior payment made.

Shortly thereafter, the Homeowners filed a first-party bad faith suit against State Farm. In the complaint, the Homeowners alleged that State Farm violated sections 624.155 and 626.9541, Florida Statutes (2017), by not engaging in good faith attempts to settle the claim. They further alleged that State Farm had failed to pay damages within sixty days from the date the CRN was filed. State Farm responded to the complaint by filing a motion to dismiss or, in the alternative, a motion for summary judgment. In its motion, State Farm primarily argued that by invoking appraisal and timely paying the appraisal award, it cured the allegations in the CRN, thus precluding a bad faith action. State Farm also argued that the CRN lacked the requisite specificity to provide State Farm with an opportunity to cure, including providing a specific cure amount.

2

The trial court ultimately granted summary judgment in favor of State Farm on two grounds. First, relying on *Talat Enterprises, Inc. v. Aetna Casualty & Surety Co.*, 753 So. 2d 1278 (Fla. 2000), the trial court concluded that the sixty-day cure period provided by section 624.155, Florida Statutes, was tolled until the appraisal award was filed and "State Farm timely cured any alleged bad faith and statutory violations by paying the full amount owed to [the Homeowners] pursuant to the appraisal award within six days after the appraisal award was filed with State Farm." Second, the trial court concluded that the CRN was deficient because it did "not 'state with specificity . . . [t]he facts and circumstances giving rise to the violation[s]' alleged in the civil remedy notice, as required by Fla. Stat. § 624.155, so as to have given State Farm an opportunity to cure." The trial court did not elaborate as to what information exactly was missing from the CRN. This appeal follows.

Section 624.155, Florida Statutes, governs bad faith claims and provides that a person may bring a civil action against an insurer when the person is damaged by the insurer's violation of "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." § 624.155(1)(b)1., Fla. Stat. (2017). As a condition precedent to bringing such an action, both the insurer and DFS must be given sixty days' written notice of the violation. § 624.155(3)(a), Fla. Stat. The statute further provides that "[n]o action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected." § 624.155(3)(d), Fla. Stat. As reiterated by our supreme court, "[t]his sixty-day window provides insurers with a final opportunity to comply with their claim-handling obligations when a good-faith decision by the insurer would indicate that contractual benefits are owed." *Fridman v. Safeco Ins. Co. of Ill.*, 185 So. 3d 1214, 1220 (Fla. 2016) (internal quotation marks and citation omitted). "[I]f payment is owed on the contract, [the insurer can] cure the claimed bad faith by paying the benefits owed on the insurance contract." *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000).

"[A] statutory bad faith claim under section 624.155 is ripe for litigation when there has been (1) a determination of the insurer's liability for coverage; (2) a determination of the extent of the insured's damages; and (3) the required notice is filed pursuant to section 624.155(3)(a)." *Demase v. State Farm Fla. Ins. Co.*, 239 So. 3d 218, 221 (Fla. 5th DCA 2018).

It is with these principles in mind that we first address the trial court's conclusion that State Farm's invocation of the appraisal process tolled the sixty-day cure period until the appraisal award was entered.

We begin our analysis by addressing the trial court's misplaced reliance on *Talat*. In that case, our supreme court held that:

> for there to be a "cure," what had to be "cured" is the non-payment of the contractual amount due the insured. In the context of a first-party insurance claim, the contractual amount due the insured is the amount owed pursuant to the express terms and conditions of the policy after all of the conditions precedent of the insurance policy in respect to payment are fulfilled. Section 624.155(1)(b), Florida Statutes (1993), then, is correctly read to authorize a civil remedy for extra contractual damages if a first-party insurer does not pay the contractual amount due the insured after all the policy conditions have been fulfilled within sixty days after a valid notice has been filed under section 624.155(2)(a), Florida Statutes (1993).

*Talat Enters., Inc.*, 753 So. 2d at 1283.

Based on this language, State Farm argued below—and the trial court presumably agreed with the argument—that because the parties did not agree to the amount of the loss, the appraisal was a condition precedent to State Farm's obligation to make payment under the policy; thus, the sixty-day cure period under section 624.155 necessarily had to be tolled pending the filing of the appraisal award. We disagree with this interpretation. In *Talat*, the CRN was filed *after* the insured obtained an appraisal award that was paid in full. Therefore, the insured did not have a statutory bad faith claim because the insurer remedied the claim within the sixty-day period. *Talat* did not address tolling of the sixty-day period when appraisal is invoked.

Recently, in *Fortune v. First Protective Insurance Co.*, 302 So. 3d 485 (Fla. 2d DCA 2020), the Second District considered whether the invocation of the appraisal process tolled the sixty-day cure period until appraisal was completed. In concluding that it does not toll, the court held that:

> [e]ven if a policy requires the mediation or appraisal process to occur prior to suit being filed, an appraisal is not a condition precedent to the insurer fulfilling its obligation to fairly evaluate the claim and to either deny coverage or to offer an appropriate amount based on that fair evaluation.

*Id.* at 490. In support thereof, the *Fortune* court relied on *Vest* wherein our supreme court expressly stated:

4

[T]here is no statutory requirement which prevents the insured from sending the statutory notice before there is a determination of liability or damages. Nor is the insurer's appropriate response to that notice depend[e]nt on such a determination. The insurer's appropriate response is based upon the insurer's good-faith evaluation of what is owed on the insurance contract. What is owed on the contract is in turn governed by whether all conditions precedent for payment contained within the policy have been met. *An insurer, however, must evaluate a claim based upon proof of loss required by the policy and its expertise in advance of a determination by a court or arbitration.*

*Vest*, 753 So. 2d at 1275–76 (emphasis added); *accord Landers v. State Farm Fla. Ins. Co.*, 234 So. 3d 856, 859 (Fla. 5th DCA 2018) ("The plain language of section 624.155(3)(d) provides no time limitation for when a CRN may be filed and does not require a final determination of coverage and damages before it is filed. The statute simply states that 'no action shall lie' if the bad-faith allegation is corrected or the damages are paid within sixty days of the insurer receiving the notice.").

We agree with *Fortune* and hold that "[t]he language of section 624.155(3)(d) does not toll the cure period until an appraisal is completed." 302 So. 3d at 490. The appraisal award is not a condition precedent to State Farm's obligation to pay the Homeowners a fair amount due under the policy. To allow the sixty-day cure period to toll at the invocation of the appraisal process would allow insurers to cause delay or otherwise act in bad faith while escaping liability as long as it makes payment within the sixty-day time period of the appraisal award. This would negate and frustrate the purpose of the statute. *See Landers*, 234 So. 3d at 859 ("[T]he purpose of the CRN is to facilitate and encourage good-faith efforts to timely settle claims before litigation, not to vindicate continuing efforts to delay." (internal citation omitted)).

State Farm nonetheless maintains that because it did ultimately pay the appraisal award, the alleged violations in the CRN were effectively cured, and no bad faith action ever accrued. We reject this argument. As noted above, an insurer "must evaluate a claim based upon proof of loss required by the policy and its expertise in advance of a determination by a court or arbitration." *Vest*, 753 So. 2d at 1275–76. In other words, when an insurer receives a claim, it has an independent duty to evaluate the claim in advance of a determination of damages and take timely, independent action. *See id.* Thus, the focus in a bad faith case is not

whether the insurer ultimately paid the amounts due under the policy, but whether it acted reasonably in evaluating the claim prior to the determination of damages. *See Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1, 7 (Fla. 2018) (reiterating that "the critical inquiry in a bad faith [case] is whether the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment").

For example, "[a] fair evaluation would be evidence that an insurer did not act in bad faith. But a lowball offer made in bad faith is not cured by an insurer ultimately paying what it is later found to owe via the appraisal process." *Fortune*, 302 So. 3d at 490. The determination of good faith or bad faith, however, "is usually a question for the finder of fact." *Id.*; *see also Landers*, 234 So. 3d at 858 n.5 ("Statutory bad-faith claims generally involve fact-intensive disputes that are resolved under a totality of the circumstances standard. It is the rare case where the facts . . . allow a court to rule on a bad faith claim as a matter of law at summary judgment." (internal quotation marks and citations omitted) (alteration in original)).

Moreover, as the court in *Fortune* pointed out, section 624.155 has since been amended and now includes a new subsection providing that a CRN "may not be filed within 60 days after appraisal is invoked by any party in a residential property insurance claim." § 624.155(3)(f), Fla. Stat. (2020). If the invocation of the appraisal process and subsequent payment of the appraisal award cures a bad faith violation as a matter of law, then this new provision would be rendered meaningless. Stated differently, if the invocation of the appraisal process cured a bad faith violation as a matter of law, then there would be no need to impose such a time limitation on when an insured can file the CRN following the appraisal process. *See Fortune*, 302 So. 3d at 490 (referencing the amendment and concluding "[t]his new provision affects the time when an insured can file a CRN but does not treat an appraisal or payment of an appraisal award as a cure of any violations alleged in the CRN").

Here, after the Homeowners filed the CRN, and State Farm received the Homeowners' estimate, State Farm invoked appraisal. Aside from its initial assessment, State Farm made no further effort to settle the claim. Although State Farm paid the appraisal award six days after it was entered, it did so over two months after the CRN's sixty-day cure period had expired. Consistent with the holding in *Fortune*, we hold that State Farm's invocation of the appraisal process and payment of the appraisal award after the cure period expired did not cure, as a matter of law, the alleged bad faith claim. *Id.* at 492; *see also Harper v. GEICO Gen. Ins. Co.*, 272 So. 3d 448, 452 (Fla. 2d DCA 2019) (finding summary judgment was

improper and insurer "was entitled to pursue her action for GEICO's alleged bad faith" where GEICO did not pay the claim within the sixty-day cure period). Whether State Farm's initial evaluation of the claim and actions during the sixty-day cure period were reasonable remains an issue of fact for a jury to resolve.

We next address the trial court's vague determination that the CRN was deficient because it failed to state with specificity the facts and circumstances giving rise to the violations. Section 624.155 provides that the CRN must set forth, among other things, "the facts and circumstances giving rise to the violation." § 624.155(3)(b)2., Fla. Stat. Here, the Homeowners' CRN listed the specific statutory provisions that State Farm allegedly violated and gave a detailed recitation of the facts surrounding the violation. In relevant part, the CRN stated that State Farm performed a cursory inspection of the property, failed to retain experts necessary to identify the repairs necessary to restore the property to its pre-loss condition, and gave a "lowball" estimate that failed to encompass all covered damages. Moreover, prior to State Farm invoking appraisal, the Homeowners provided State Farm with their detailed estimate. Thus, the CRN sufficiently put State Farm on notice of the facts and circumstances giving rise to the violations and the corrective action required to remedy the violations.

Accordingly, we reverse the final summary judgment entered in favor of State Farm and remand for further proceedings in which the Homeowners can pursue their bad faith action.

*Reversed and remanded.*

CIKLIN, J., concurs.
KLINGENSMITH, J., concurs with opinion.

KLINGENSMITH, J., concurring.

I concur in the majority's holding to reverse based on the existing case law regarding bad faith as enunciated by the Florida Supreme Court as well as by our sister courts in reliance on those decisions. Under those decisions, an insurer can be forced to trial for bad faith even when it exercises its contractual rights under the policy or seeks to use due diligence in investigating a claim. *See, e.g., Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1 (Fla. 2018) (insurer's tender of policy limits within days of an accident did not bar a bad faith claim). While we are constrained by those decisions, I believe that Justice Wells was correct when he noted in his dissent in *Berges v. Infinity Ins. Co.*, 896 So. 2d 665 (Fla. 2004), that it is

not "acceptable . . . to merely say that bad faith is a jury question." 896 So. 2d at 686 (Wells, J., dissenting); *see also Harvey*, 259 So. 3d at 13 (Canady, J., dissenting) (same). Therefore, clearer guidelines are needed to outline the parameters of a bad faith action. *See Berges*, 896 So. 2d at 686 (Wells, J., dissenting).

In this instance, the current statutory amendment to section 624.155 tolls the sixty-day cure period when an appraisal is requested, but only if the CRN is sent by the insured *after* the insurer requests appraisal. *See* § 624.155(3)(f), Fla. Stat. (2020). In the event the insured wins the race to the mailbox and sends its CRN *before* the insurer invokes the appraisal process to evaluate the extent of covered damage, then no tolling occurs.

While it would make sense for the insurer's election of the appraisal process to stay the CRN's sixty-day cure period, regardless of when the insurer seeks the contractual right to an appraisal, the language of the statute—as it existed either before or after the amendment—does not provide for this. Further, it is not our role to re-write the statute to create this result by judicial fiat. "Even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity." *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 454 (Fla. 1992); *see Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008) ("We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable. Instead, we must give effect to the text Congress enacted . . . ." (footnote omitted)); *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 126 (1989) ("Our task is to apply the text, not to improve upon it."). Therefore, any correction of this possible statutory defect should come from the Legislature and not the courts.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

8