# Third District Court of Appeal

## State of Florida

Opinion filed March 19, 2025.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D23-2247
Lower Tribunal No. 18-22406

————————————

## Progressive American Insurance Company,
Appellant,

vs.

## Pedro Gonzalez, et al.,
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Lisa S. Walsh, Judge.

Banker Lopez Gassler, P.A., and Chris W. Altenbernd and Ezequiel Lugo (Tampa), for appellant.

Podhurst Orseck, P.A., and Stephen F. Rosenthal and Kristina M. Infante, for appellees.

Before LOGUE, C.J., and GORDO and LOBREE, JJ.

LOGUE, C.J.

Progressive American Insurance Company appeals a $25 million-dollar final consent judgment in a bad faith action that expressly reserved the right to appeal issues relating to a civil remedy notice and the notice requirements of section 624.155, Florida Statutes (2018). Progressive contends the trial court erred in denying summary judgment and allowing the bad faith action to proceed when Progressive was never given 60-days' notice and an opportunity to cure as required by the statute. We agree and reverse.

## Background

On May 2, 2018, Pedro Gonzalez filed a civil remedy notice with the Department of Financial Services (the "Department"). Progressive was not provided with the civil remedy notice by either Gonzalez or the Department.

On July 2, 2018, Pedro and Elsa Gonzalez (collectively, "Gonzalez") sued Progressive alleging statutory first-party bad faith pursuant to section 624.155. On July 17, 2018, Gonzalez provided Progressive with the civil remedy notice. This notice was given 75 days after it was filed with the Department and 15 days after the bad faith action against Progressive was commenced.

After discovery was taken, Progressive moved for summary judgment arguing that it had not been given notice and an opportunity to cure 60 days

before the suit was filed as required by the statute. It averred that it was not its business practice to monitor the Department's website for civil remedy notices. Gonzalez responded by contending Progressive had access to the Department's website and could have found the civil remedy notice itself had it searched for it.

The trial court ultimately denied Progressive's summary judgment motion. The trial court concluded that Gonzalez satisfied the civil remedy notice requirements under section 624.155, reasoning that the statute did not specify who was to give notice to the insurance company and it was undisputed that Progressive had immediate access to the filed civil remedy notice on the Department's website. The parties then stipulated to a judgment, with an express reservation of all appellate issues concerning the civil remedy notice and whether Gonzalez satisfied the notice requirements of section 624.155. This appeal followed.

## Legal Analysis

This is a first-party bad faith action governed by section 624.155. This case is governed by the version of the statute in effect in 2018. We note this fact because the statute has subsequently been amended.[1] "Because this

---

[1] Under the 2018 version of section 624.155, the Department was not required to send a copy of the civil remedy notice to the carrier. This

statute is in derogation of the common law, it must be strictly construed." Talat Enters., Inc. v. Aetna Cas. & Sur. Co., 753 So. 2d 1278, 1283 (Fla. 2000). Section 624.155 allows an insured to sue his or her own insurance company for failing to handle his or her claim in good faith. Before such a lawsuit can be filed, however, the statute requires that the insurance company be given 60 days' notice and an opportunity to cure:

> (3)(a) As a condition precedent to bringing an action under this section, the department and the authorized insurer must have been given 60 days' written notice of the violation. If the department returns a notice for lack of specificity, the 60-day time period shall not begin until a proper notice is filed.
>
> . . . .
>
> (d) No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected.

§ 624.155, Fla. Stat. (2018) (emphases added). The Florida Supreme Court has explained that in the case of first-party bad faith, the "only remedy [is] statutory[.]" Macola v. Gov't Emps. Ins. Co., 953 So. 2d 451, 457 (Fla. 2006) (citing Talat Enters., 753 So. 2d at 1283-84). And, the Court further explained, the statute conditions the remedy "on notice by the insured and failure by the insurer to pay the damages within the cure period." Id.

---

requirement was added in 2020. See Ch. 2020-63, § 4, Laws of Fla.; § 624.155, Fla. Stat. (2020).

4

"The sixty-day window is designed to be a cure period that will encourage payment of the underlying claim, and avoid unnecessary bad faith litigation." Talat Enters., 753 So. 2d at 1282. "This sixty-day window provides insurers with a final opportunity 'to comply with their claim-handling obligations when a good-faith decision by the insurer would indicate that contractual benefits are owed.'" Fridman v. Safeco Ins. Co. of Ill., 185 So. 3d 1214, 1220 (Fla. 2016) (quoting Talat Enters., 753 So. 2d at 1284). See also Landers v. State Farm Fla. Ins. Co., 234 So. 3d 856, 858 (Fla. 5th DCA 2018) ("During the sixty-day period, the insurer has an opportunity to cure the alleged violation—no action will lie if, within those sixty days, 'the damages are paid or the circumstances giving rise to the violation are corrected.'" (quoting § 624.155(3)(d), Fla. Stat.)); Julien v. United Prop. & Cas. Ins. Co., 311 So. 3d 875, 878 (Fla. 4th DCA 2021) ("The insurer's ability to cure any grievances exists to 'avoid unnecessary bad faith litigation.'" (quoting Galante v. USAA Cas. Ins. Co., 895 So. 2d 1189, 1191 (Fla. 4th DCA 2005))); Lane v. Westfield Ins. Co., 862 So. 2d 774, 779 (Fla. 5th DCA 2003) ("The purpose of the civil remedy notice is to give the insurer one last chance to settle a claim with its insured and avoid unnecessary bad faith litigation—not to give the insured a right of action to proceed against the insurer even after the insured's claim has been paid or resolved.").

5

Here, the summary judgment record—specifically, the deposition testimony of a Progressive claims attorney and Progressive's director of claims processing—reflects that (1) there was no documentation in Progressive's file showing it received the civil remedy notice before July 17, 2018; (2) the Department did not at that time notify Progressive when a civil remedy notice was filed; and (3) Progressive did not monitor the Department's website for civil remedy notices. The record reflects that Gonzalez's counsel faxed a copy of the civil remedy notice to Progressive on July 17, 2018, 75 days after the notice was filed with the Department and 15 days after the underlying action was filed. There is no evidence in the summary judgment record that would support a fact-finding that Progressive received a copy of the civil remedy notice filed with the Department prior to July 17, 2018. Thus, there is no evidence in the record that Progressive was "given 60 days' written notice of the violation." § 624.155(3)(a), Fla. Stat.

Gonzalez, however, notes that section 624.155(3)(a) is written in the passive voice: it does not state who must give the notice. The statute only states that "the department and the authorized insurer must have been given 60 days' written notice of the violation" and that this requirement is "a condition precedent to bringing an action under this section." § 624.155(3)(a), Fla. Stat. Because the statute does not expressly state who

6

is required to give the notice, Gonzalez argues he cannot be held responsible for the failure of Progressive to receive the notice required by section 624.155(3)(a).

We respectfully but firmly reject this argument. In the first place, setting aside for the moment the question of precisely who must provide the notice, the statute clearly provides that notice "given" to the authorized insurer is a condition precedent to filing this statutory bad faith action against the authorized insurer. Under the plain language of the statute—if there is no notice, there can be no statutory bad faith action. Because no notice was given here, no bad faith action could be brought.

For this reason, we do not accept that the use of the passive voice in the statute creates any serious confusion about who must give the notice. Because the giving of notice is a condition precedent to bringing a bad faith lawsuit, it follows that the notice must be effectuated by the party seeking to bring the bad faith lawsuit. In fact, Gonzalez conceded at oral argument that language of the statute indicated that the party bringing the action was required to comply with the condition precedent of giving notice to the Department. Because the statute speaks in the same phrase of notice given to "the department and the authorized insurer," the plain meaning of this

7

version of the statute is that the party bringing the action is equally responsible to give notice to the Department <u>and</u> the insurer.

Gonzalez finally argues that his act of filing the notice with the Department constituted notice to Progressive. He supports this argument by referring to later subsections of the statute that refer to the "filing" of the notice. For example, subsection (d) provides that the cure period runs from the "filing" of the notice; and subsection (e) provides that "the recipient of a notice filed pursuant to this section shall report to the department on the disposition of the alleged violation." § 624.155(3)(d), (3)(e), Fla. Stat. These references to "filing," Gonzalez contends, indicate that filing was sufficient notice, particularly because Progressive had access to the Department's website where the Department posted the notice.

In support, Gonzalez submitted the affidavit of his insurance-industry expert, who attested that "Progressive could and should have logged into the [Department's] website regularly and searched for any newly filed [civil remedy notices]." The expert averred that (1) the civil remedy notices were immediately available on the Department's website after filing; and (2) the expert implemented a process for two carriers she represented that involved checking the Department's website daily for newly filed civil remedy notices.

8

Gonzalez's suggested interpretation admittedly resolves some interpretive problems in this version of the statute. The purpose of the statute, however, is clearly to provide the insurer with notice and a 60-day window to pay the claim and avoid the bad faith lawsuit. This statutory scheme begins to fray if the running of the sixty-day cure period begins from the date of filing with the Department rather than the date of notice to the insurer, as this version of the statute appears to require. Our sister court, apparently following this literal language, has nevertheless held as much in Harper v. GEICO General Insurance Company, 272 So. 3d 448, 451 (Fla. 2d DCA 2019).

However, Gonzalez's interpretation takes Harper one step further and eliminates the interpretive problem by equating notice to the Department with notice to the insurer. While Gonzalez's interpretation eliminates one anomaly in the wording of the statute, it creates its own anomalies, for starters, by directly conflicting with the provisions of the statute that refer to "the authorized insurer that is the recipient of a notice" and "mailing of the notice required by this subsection." § 624.155(3)(e), (3)(f), Fla. Stat. (2018).

The biggest problem with Gonzalez's interpretation, however, is that it eliminates interpretive irregularities by the expedient of interpreting away any requirement to provide actual notice to the insurer. We think this is an

9

interpretive leap too far from the core provision of the text which expressly states that "the department and the authorized insurer must have been given 60 days' written notice of the violation." If notice to the Department constituted notice to the insurer, there would be no reason for the Legislature to name the Department and the insurer separately. More profoundly, because the statute is designed to give the insurer a cure period, it necessarily follows that an insurer must be given timely notice of claimed violations so that it has an opportunity to cure if warranted.

Reconciling the various provisions of the statute with reference to "all the textual and structural clues that bear on the meaning of a disputed text," Conage v. United States, 346 So. 3d 594, 598 (Fla. 2022) (citations and quotations omitted), we reject the argument that filing with the Department constitutes giving notice to the insurer in this version of the statute.

Finally, we reject the argument that we should read into the statute a requirement that the insurer monitor the Department's website to search for notices filed with the Department. The plain language of the statute does not require an insurer to implement such a process. This reading would alter the statute's "must have been given" language into a requirement that the insurer "must seek out and find." Therefore, to say that Progressive was required to have such a process in place would be to add language to the statute that is

not there. <u>See, e.g.</u>, <u>Hayes v. State</u>, 750 So. 2d 1, 4 (Fla. 1999) ("We are not at liberty to add words to statutes that were not placed there by the Legislature.").

Reversed.